KLEIN et al., Appellants,

v.

BISCUP et al., Appellees.

[Cite as *Klein v. Biscup* (1996), 109 Ohio App.3d 855.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 68615 and 68659.

Decided March 20, 1996.

856

*Thomas G. Kelley,* for appellants.

*Jones, Day, Reavis & Pogue, Catherine W. Smith, Mark Herrmann* and *Richard I. Werder,* for appellee AcroMed Corporation.

*Jacobson, Maynard, Tuschman & Kalur, Janis L. Small, Joan A. Ford* and *Douglas G. Leak,* for appellee Robert S. Biscup.

*Arter & Hadden, Irene C. Keyse-Walker* and *Robert C. Tucker,* for *amicus curiae,* Ohio State Medical Association.

---

O'DONNELL, Judge.

Martha and Leon Klein appeal the decisions of the trial court granting summary judgment in favor of AcroMed Corporation on a products liability claim and partial summary judgment in favor of Robert S. Biscup, D.O., on an informed consent claim.

In 1988, Martha Klein visited Dr. Biscup complaining of lower back pain. After running tests, Biscup determined that she suffered from a narrowing of the spine and recommended that she undergo spinal fusion surgery to alleviate the condition. The surgery involved removing the disc between the L4 and L5 vertebrae and implanting bone graft where the disc had been. In order to stabilize the spine while the vertebrae fused, Biscup proposed to implant bone plates and bone screws which, in this case, were produced by AcroMed.

The history of AcroMed bone plates and bone screws is relevant to this case. The record reveals that AcroMed filed two applications with the Food and Drug Administration ("FDA"), one in September 1984 and the other in September 1985, seeking permission to market this device as a spinal implant under the FDA's premarket notification procedures. The FDA rejected both applications, stating that the device was not substantially equivalent to any spinal implant on the market before 1976. Thereafter, in December 1985, AcroMed filed a third application with the FDA, but this time seeking permission to market the device for use in long and flat bones. The FDA approved this third application and permitted AcroMed to market the device in accordance with the application.

Dr. Biscup proposed to use the AcroMed devices in Martha Klein's spine, not in her long or flat bones. Because this use is not the use for which the device is marketed and labeled, it is referred to in the industry as an "off-label" use.

Before surgery, Martha Klein signed a consent form acknowledging that Biscup had informed her of the risks involved in the surgery and had answered all of her questions. Biscup did not advise Martha Klein that the AcroMed devices were not marketed specifically for use in the spine and that implantation of the devices in her spine would be an off-label use.

Biscup performed the surgery on July 28, 1988. However, after the surgery, Klein experienced pain in her legs as well as bladder and bowel control problems, and in January 1989, she was diagnosed as having a fracture of her L5 vertebra

and required further surgery. Again Klein signed a consent form like the form used for the first surgery, and as before, Biscup did not disclose any information regarding the FDA status of the devices. During this second surgery, Biscup removed the bone plates and screws used in the first surgery and then implanted new AcroMed devices. This surgery attempted to fuse from L–1 to S–1 levels of the spine. After this second surgery, Martha Klein's spine fused.

In January 1994, the Kleins filed suit against AcroMed, claiming breach of implied warranty, defective product, and fraud on the FDA in the manufacture of the plates and screws, and against Biscup, claiming negligence in that deviations from the standard of care had caused substantial permanent injury and further claiming that Biscup had failed to obtain informed consent since he had not informed her the surgery was experimental in nature and not approved by the FDA.

The trial court granted summary judgment in favor of AcroMed, holding that all claims were barred by the doctrine of federal preemption, and also granted partial summary judgment in favor of Biscup on the issue of informed consent. The negligence claims were tried to a jury, which returned a verdict in favor of Biscup. The Kleins now appeal the court's summary judgment decisions and assign two errors for our review. In addition to briefs filed by the parties, the Ohio State Medical Association filed a brief *amicus curiae.*

The assignments of error presented for our review are as follows:

"I. The trial court erred in granting defendant/appellee Acromed Corp.'s, motion for summary judgment.

"II. The trial court erred in granting defendant/appellee Robert S. Biscup, D.O.'s, motion for partial summary judgment."

Because both assignments of error challenge the granting of summary judgment, we must consider first the appropriate standard of review in a case involving summary judgment.

Civ.R. 56 governs summary judgments, and in *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, at 511, 628 N.E.2d 1377, at 1379, the Ohio Supreme Court explained the rule's requirements:

"Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Temple v.*

*Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274."

The party seeking the summary judgment bears the burden of proof in showing that no material issue of fact remains to be litigated. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. Furthermore, all doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 604 N.E.2d 138. However, "[a] motion for summary judgment forces a nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media* (1991), 59 Ohio St.3d 108, at 111, 570 N.E.2d 1095, at 1099. Civ.R. 56(E) codifies this concept and provides in part:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response * * * must set forth specific facts showing that there is a genuine issue for trial." See *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 629 N.E.2d 513.

With these standards in mind, we now address the granting of summary judgment on the issues of federal preemption and informed consent.

The first assignment of error addresses the issue of federal preemption. The appellants contend that their cause of action on claims of implied warranty, defective product, and fraud against the FDA are not preempted by federal law because it was not the intent of Congress to preempt state tort actions concerning these medical devices. They also argue that damage claims are not preempted where the manufacturer made fraudulent representations to the FDA in order to obtain permission to market the device.

At the time this appeal was filed and briefed, the case of *McAuliffe v. W. States Import Co., Inc.* (1995) 72 Ohio St.3d 534, 651 N.E.2d 957, was pending before the Ohio Supreme Court. The court recently decided the case and held that product liability claims are governed by the two-year statute of limitations under R.C. 2307.73, not the six-year statute of limitations provided in R.C. 2305.07. Based on this decision, therefore, appellants' counsel conceded these claims at oral argument, and chose to proceed only with the claim based on fraud against the FDA.

AcroMed argues that this claim is barred by federal preemption and urges that the case law supports its argument.

The single issue before us concerning AcroMed is whether federal law preempts this claim based on fraud against the FDA. This issue appears to be a matter of first impression in Ohio.

The doctrine of federal preemption derives from the Supremacy Clause of the United States Constitution, which provides:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Clause 2, Article VI, United States Constitution.

Thus Congress has the power to preempt state law. However, in determining whether state law is preempted, courts have traditionally determined that there is a presumption against preemption. "Consideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress.'" *Cipollone v. Liggett Group, Inc.* (1992), 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407, 422, quoting *Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459.

In Ohio, the Ohio Supreme Court recognizes that federal law may preempt state law claims if Congress has made that its intent. "As the [Ohio Supreme Court] acknowledged in *In re Miamisburg [Train Derailment Litigation* (1994)], 68 Ohio St.3d [255] at 262, 626 N.E.2d [85] at 91, state tort claims can be within the preemptive reach of a federal statute in the appropriate situation, despite the presumption against preemption." *Jenkins v. James B. Day & Co.* (1994), 69 Ohio St.3d 541, at 544, 634 N.E.2d 998, at 1001.

In this case AcroMed argues that the Kleins' claim is preempted by the 1976 Medical Device Amendments ("MDA") to the Food, Drug and Cosmetics Act of 1938. These amendments give the FDA regulatory authority over medical devices and authorize the agency to promulgate implementing regulations. Section 371(a), Title 21, U.S.Code. In particular, Section 360k, Title 21, U.S.Code provides, in part:

"[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any *requirement*—

"(1) which is different from, or in addition to any requirement applicable under this chapter to the device, and

"(2) which relates to the safety or effectiveness of the device or any other matter included in a requirement applicable to the device under this chapter." (Emphasis added.)

■ In analyzing the preemptive scope of this statute, we first need to address whether state court decisions would amount to a "requirement" for the purposes of Section 360k. On this issue, the United States Supreme Court explained:

"[R]egulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme." *San Diego Bldg. Trades Council v. Garmon* (1995), 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775, 785.

In fact, courts have recognized this concept in relation to Section 360k in particular. In *Covey v. Surgidev Corp.* (N.D.Ohio 1993), 815 F.Supp. 1089, the United States District Court for the Northern District of Ohio explained:

"[I]t is well-settled that legal actions brought pursuant to state law and resulting verdicts are indeed a form of state regulation or, more specifically, constitute state-imposed requirements for the purposes of Section 360k(a). A great majority of the courts analyzing Section 360k(a) have come to this conclusion." (Citations omitted.)

■ With the understanding that a state court decision can be a "requirement," we next consider whether a decision on this claim based on fraud against the FDA would be a requirement that is different from or in addition to federal requirements, and thus run afoul of Section 360k(a).

We note that Congress prohibits certain fraudulent activities when dealing with the FDA in Section 331, Title 21, which states:

"The following acts and the causing thereof are prohibited:

" * * *

"(q)(2) With respect to any device, the submission of any report that is required by or under this chapter that is false and misleading in any material respect."

Congress also provides for penalties in Section 333(a), Title 21 for such violations.

In this case AcroMed initially tried to get approval for its bone plates and bone screws for use in the spine. However, when the FDA rejected the applications, AcroMed applied for permission to market the device for general use—not specifically the spine—and received permission. If the FDA determines that these submissions by AcroMed were materially false or misleading as prohibited under Section 331(q)(2), then AcroMed would be liable for penalties under Section

333(a). Therefore, if a state court were to determine whether such activities constituted fraud on the FDA, the result would amount to a state requirement that is different from or in addition to requirements already in place at the federal level and, consequently, would be preempted under the preemptive provision contained in Section 360k.

A United States Court of Appeals reached this same conclusion in a recent case involving this same claim, this same device, and this same defendant. In *Reeves v. AcroMed* (C.A.5, 1995), 44 F.3d 300, 307, the court reasoned:

"Given the FDA's central role in reviewing and approving devices under the MDAs, the FDA is in the best position to decide whether AcroMed withheld material information from the agency and, if so, the appropriate sanction. Allowing a jury or court to second-guess the FDA's enforcement of its own regulations contravenes Congress' expressly stated intent in § 360k(a) to eliminate attempts by states to impose conflicting requirements on medical device manufacturers."

Accordingly, we conclude the trial court correctly found no genuine issues of material fact at issue and properly granted summary judgment in favor of AcroMed. Therefore, the first assignment of error is without merit.

The second assignment of error concerns the issue of informed consent. Appellants contend that Biscup did not fully inform Martha Klein of the risks of the procedure because he never explained that the devices were not approved by the FDA for the specific use he proposed. They further argue that Biscup failed to advise her that her preexisting osteoporosis placed her at greater risk for the procedure.

Biscup contends that he fully informed Klein of the risks associated with the procedure because the FDA status of a device is not a risk of a medical procedure, or, in the alternative, Biscup contends that the FDA does not regulate the practice of medicine, and therefore the FDA status of the devices was wholly irrelevant to the issue of informed consent. He further believes that appellants have failed to produce any evidence of injury from his failure to inform her of the regulatory status, and, in addition, Biscup urges that appellants have not raised a material issue of fact as to her preexisting osteoporosis condition.

The Ohio State Medical Association ("OSMA"), in its *amicus curiae* brief, argues that the FDA neither regulates the practice of medicine nor restricts uses to those indicated by device manufacturers and urges that off-label use is neither experimental nor investigational. Next, it argues that Ohio's law on informed consent only requires information on material risks of medical procedures. Finally, OSMA asserts that expanding the doctrine of informed consent to include the FDA status of drugs and devices would be contrary to sound public policy.

The two issues then for our resolution concerning Biscup are whether Ohio law requires a physician to explain the FDA status of a medical device in order to obtain informed consent and whether Biscup's duty to inform Martha Klein about the risk of her preexisting osteoporosis was timely raised and properly evidenced to the trial court.

The Supreme Court of Ohio established the tort of informed consent in *Nickell v. Gonzalez* (1985), 17 Ohio St.3d 136, 17 OBR 281, 477 N.E.2d 1145, and defined the elements in the syllabus:

"The tort of lack of informed consent is established when:

"(a) The physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any;

"(b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and

"(c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy."

■ The appellants' first claim for failure to give informed consent relates to the FDA status of the bone plates and bone screws. The record reveals that Biscup explained to Martha Klein that the material risks of the surgery included death, stroke, heart attack, infection, blood clot and dural tear. The issue for our consideration is whether off-label use of a device constitutes a material risk under *Nickell, supra.*

Initially we note that although the FDA regulates, among other things, drugs and medical devices, the FDA does not regulate the practice of medicine. The legislative history of the federal Food, Drug and Cosmetic Act reveals that Congress recognized that the act was "not intended as a medical practices act and [would] not interfere with the practice of the healing art." Senate Rep. No. 361, 74th Congress, 1st Session, at 3 (1935).

In conformity with this legislative intent, courts addressing FDA-regulated drugs have determined that physicians are permitted to use federally approved drugs as they, in their medical judgment, see fit. This professional latitude was recognized in *Weaver v. Reagen* (C.A.8, 1989), 886 F.2d 194, 198:

"Contrary to defendants' assertions, FDA approved indications were not intended to limit or interfere with the practice of medicine nor to preclude physicians from using their best judgment in the interest of the patient. * * *

"The [Food, Drug and Cosmetic] Act does not * * * limit the manner in which a physician may use an approved drug. Once a product has been approved for marketing, a physician may prescribe it for uses or in treatment regimens or patient populations that are not included in approved labeling. 'Use of Approved Drugs for Unlabeled Indications,' 12 FDA Drug Bulletin 4 (April 1982)."

■ Thus, the decision whether to use a drug for an off-label purpose is a matter of medical judgment, not of regulatory approval. By analogy, the off-label use of a medical device is also a matter of medical judgment and, as such, subjects a physician to professional liability for exercising professional medical judgment. Off-label use of a medical device is not a material risk inherently involved in a proposed therapy which a physician should disclose to a patient prior to the therapy. See *Nickell, supra.* Therefore, since Biscup engaged in off-label use of this medical device he could be subject to professional liability for medical negligence, but in this case those claims have been litigated and are not before us. Accordingly, we conclude that failure to disclose FDA status does not raise a material issue of fact as to informed consent.

■ The appellants' second claim for failure to give informed consent relates to Martha Klein's preexisting osteoporosis.

In this case, the Kleins raised this issue for the first time in a supplement to their brief in opposition to the motion for summary judgment. In this supplement they cited deposition testimony of F. Todd Wetzel, M.D., Biscup's expert, who testified on cross-examination, "My strong feeling is the [spinal] fracture is due to osteoporosis."

The trial court granted Biscup's motion for summary judgment on this issue because appellants failed to file a copy of the deposition transcript,[1] and the testimony fell below the required evidentiary standard, and also because these new contentions constituted a major deviation from the complaint on the eve of trial.

In *Stinson v. England* (1994), 69 Ohio St.3d 451, 633 N.E.2d 532, the Ohio Supreme Court stated in paragraph one of its syllabus:

" * * * An event is probable if there is a greater than fifty percent likelihood that it produced the occurrence at issue. (*Cooper v. Sisters of Charity of Cincinnati, Inc.* [1971], 27 Ohio St.2d 242, 253, 56 O.O.2d 146, 152, 272 N.E.2d 97,

---

1. When counsel for appellants deposed F. Todd Wetzel, appellee's expert, Wetzel refused to waive signature. Counsel, therefore, could not comply with Civ.R. 56(C) or (E) at the time he responded to the pending motion for summary judgment. Instead of seeking additional time to respond, counsel filed a photocopy of the deposition, the substance of which neither party seriously challenges. Nonetheless, the trial court held that even if the deposition had been properly before the court, the testimony still fell below the required standard of evidence.

104, followed.) * * * [E]xpert opinion regarding a causative event * * * must be expressed in terms of probability * * *."

In this case, appellants' counsel presented the cross-examination deposition testimony from Biscup's expert, who had testified to a "strong feeling" about the cause of the fracture being related to the preexisting osteoporosis, in an effort to overcome Biscup's motion for summary judgment. This evidence, however, is insufficient to establish a material fact as to the proximate cause of the injury because *Stinson* requires that medical expert testimony demonstrate a greater than fifty percent likelihood that it produced the occurrence at issue, and the testimony about a strong feeling cannot be characterized as equivalent to "greater than fifty percent likelihood." Accordingly, that testimony does not raise a genuine issue of material fact concerning the cause of the fracture.

Since we have concluded that there is no genuine issue of material fact and that Biscup is entitled to judgment as a matter of law on the issue of off-label use of a medical device, and since we have further concluded that appellants have failed under *Wing, supra,* to properly evidence a genuine issue of material fact on the issue of informed consent concerning preexisting osteoporosis, the trial court correctly granted summary judgment in favor of Biscup on the issue of informed consent and the second assignment of error is overruled.

*Judgment affirmed.*

BLACKMON, P.J., and KARPINSKI, J., concur.