RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0166p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

PLANNED PARENTHOOD SOUTHWEST OHIO REGION;
PLANNED PARENTHOOD OF GREATER OHIO; PRETERM;
TIMOTHY KRESS,

*Plaintiffs-Appellees,*

*v.*

MIKE DEWINE (17-3866); JOSEPH DETERS (17-3867),

*Defendants-Appellants.*

Nos. 17-3866/3867

───────────────

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:04-cv-00493—Susan J. Dlott, District Judge.

Argued: October 16, 2018

Decided and Filed: July 25, 2019

Before: MERRITT, DAUGHTREY, and STRANCH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Hannah C. Wilson, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant Mike DeWine. Jennifer L. Branch, GERHARDSTEIN & BRANCH CO. LPA, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Eric E. Murphy, Stephen P. Carney, Tiffany L. Carwile, Bridget C. Coontz, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant Mike DeWine. Roger E. Friedmann, Michael G. Florez, HAMILTON COUNTY PROSECUTOR'S OFFICE, Cincinnati, Ohio, for Appellant Joseph Deters. Jennifer L. Branch, Alphonse A. Gerhardstein, GERHARDSTEIN & BRANCH CO. LPA, Cincinnati, Ohio, for Appellees.

---

**OPINION**

---

MARTHA CRAIG DAUGHTREY, Circuit Judge.   Planned Parenthood brought this challenge to an Ohio statute that regulates the use and prescription of mifepristone for the medical induction of abortion.  Based on the likelihood of success of one of its claims, Planned Parenthood obtained a preliminary injunction, which this court eventually narrowed to an as-applied injunction and which restrained enforcement of the law for almost 12 years.  Before a final adjudication of the merits of that claim, however, actions by the Food and Drug Administration (FDA), a non-party in this case, mooted the dispute.  Planned Parenthood sought and was awarded attorneys' fees and costs for the work it did in litigating the preliminary injunction.  Defendants Michael Dewine, the Attorney General of Ohio, and Joseph Deters, the Hamilton County Prosecuting Attorney and representative of a defendant class of all prosecuting attorneys in Ohio, appeal the district court's fee award. They argue that Planned Parenthood does not properly qualify as a "prevailing party" because its relief was narrow, temporary, and preliminary; that the district court erred in refusing to apply a blanket fee reduction based on Planned Parenthood's degree of success; and that the district court erred in applying 2016 rates rather than 2006 rates in calculating the award.  We conclude that the district court properly engaged in a contextual, case-specific review and appropriately determined that Planned Parenthood prevailed in this litigation because its relief, albeit preliminary, was based on the merits of its claim, provided a benefit to the plaintiffs, and was sufficiently lasting.  Furthermore, the district court properly considered the law and the aims of 42 U.S.C. § 1988 and adequately explained its rationale for refusing to apply a blanket fee reduction and for using 2016 rates to calculate the award.  We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2004, the Ohio General Assembly enacted Ohio Revised Code § 2919.123, which regulates the use and prescription of mifepristone (also known as RU-486).  Mifepristone is a drug commonly used in conjunction with another drug, misoprostol, to induce abortion in the

first trimester without the need for the patient to undergo surgery.  In 2000, the FDA approved the use of mifepristone to end a pregnancy based on a dosage protocol that used 600 milligrams of the drug and could be prescribed through 49 days following a woman's last menstrual period (LMP).  However, following FDA approval, physicians prescribing mifepristone began relying on a newer, evidence-based protocol that allowed the drug's usage through 63 days post-LMP and prescribed only 200 milligrams of the drug.

Though physician reliance on evidenced-based, "off-label" protocols is standard medical practice and is often protected in certain areas of state law, including in Ohio, *see, e.g.,* Ohio Rev. Code § 1751.66(A), with regard to mifepristone, the state saw fit to limit physicians' prescribing options.  To that end, the Ohio legislature passed the mifepristone statute, which criminalizes uses of mifepristone not "in accordance with all provisions of federal law that govern the use of RU-486 (mifepristone) for inducing abortions."  Ohio Rev. Code § 2919.123(A).  Further, the statute defines "federal law" as including "any drug approval letter of the food and drug administration of the United States."  Ohio Rev. Code § 2919.123(F)(1).

On August 2, 2004, slightly over a month before the statute was scheduled to take effect, Planned Parenthood Cincinnati Region, two additional Planned Parenthood clinics, and one other reproductive healthcare provider not affiliated with Planned Parenthood[1] brought suit against the governor of Ohio, the attorney general of Ohio, and a defendant class of the state's prosecuting attorneys in their official capacities.  Planned Parenthood challenged the statute pursuant to 42 U.S.C. § 1983 on behalf of themselves and their patients.

Planned Parenthood's complaint alleged four claims:  the statute was unconstitutional due to vagueness; it violated individuals' bodily autonomy; it imposed an undue burden on patients' right to abortion; and it violated due process because it lacked an exception to protect the health or life of the woman.  With regard to the health-or-life-exception claim, Planned Parenthood argued that certain medical conditions render induced abortion via medication (rather than surgery) safer and thus necessary for particular patients through 63 days post-LMP.  Planned

---

[1]For ease of reading, the opinion will refer to these plaintiffs collectively as Planned Parenthood, even though the non-affiliated provider is still involved in the litigation.

Parenthood sought declaratory relief as well as a preliminary injunction and a permanent injunction preventing enforcement of the statute. The same day, Planned Parenthood filed a motion and a supporting memorandum of law seeking a preliminary injunction. The state opposed the motions and filed its own motion to dismiss Planned Parenthood's complaint.

Following a two-day evidentiary hearing, the district court denied the state's motion to dismiss and granted Planned Parenthood's motion for a preliminary injunction on September 22, 2004, the day before the statute was to go into effect. The district court enjoined the statute in full, holding that, due to its lack of a health-or-life exception, the plaintiffs "ha[d] a substantial likelihood of success on the merits that the [statute] violates the Due Process Clause and is unconstitutional." *Planned Parenthood Cincinnati Region v. Taft*, 337 F. Supp. 2d 1040, 1047 (S.D. Ohio 2004). The district court also found that the equities balanced in Planned Parenthood's favor, largely due to its substantial likelihood of success on the merits of its health-or-life-exception claim. The district court did not address Planned Parenthood's other claims.

On February 24, 2006, we affirmed the district court's order in part, and on April 13, 2006, we issued an amended decision but still found "no basis for overturning the district court's determination that [Planned Parenthood] had established a strong likelihood of succeeding on the merits of their claim that the [statute] is unconstitutional because it lacks a health or life exception." *Planned Parenthood Cincinnati Region v. Taft*, 444 F.3d 502, 518 (6th Cir. 2006). However, we affirmed the injunction only "insofar as it prohibits unconstitutional applications of the [statute]" and vacated the injunction to the extent that its application was overbroad. *Id.* at 517–18. We then remanded the case for reconsideration of the scope of the injunction in light of legislative intent and Planned Parenthood's other claims. *Id.*

Following that ruling, Planned Parenthood filed a consolidated motion in the district court seeking summary judgment on their vagueness claim or, in the alternative, a renewed preliminary injunction of the statute in its entirety based on the plaintiffs' remaining constitutional claims. On September 27, 2006, the district court granted Planned Parenthood's motion and permanently enjoined the statute in its entirety. The state appealed.

On December 1, 2006, prior to resolution of the state's appeal, Planned Parenthood filed a motion seeking $475,886.77 in attorneys' fees for work done through November 30, 2006.**[2]** This total included a ten-percent fee reduction to acknowledge and offset the possibility of duplicated efforts.  On February 1, 2007, the state filed a motion to stay the fee-motion proceedings, and the district court granted the stay.

Following the district court's stay of Planned Parenthood's attorneys' fees application, litigation continued. In June 2008, we *sua sponte* certified two questions to the Supreme Court of Ohio regarding interpretation of the statute.  *Planned Parenthood of Cincinnati Region v. Strickland*, 531 F.3d 406, 412 (6th Cir. 2008) (*Strickland I*).  We first asked the Court to determine whether the statute "mandate[s] that physicians in Ohio who perform abortions using mifepristone do so in compliance with the forty-nine-day gestational limit described in the FDA approval letter[.]"  Second, we asked whether the statute "mandate[s] that physicians in Ohio who perform abortions using mifepristone do so in compliance with the treatment protocols and dosage indications described in the drug's final printed labeling[.]"  *Id.*  Our decision in *Strickland I* expressly stated that the injunction restraining all enforcement of the statute would remain in place pending the Ohio Supreme Court's review and a further order from the Sixth Circuit.  *Id.* at 414.

On July 1, 2009, the Supreme Court of Ohio issued its opinion addressing the certified questions, confirming that the statute requires physicians to adhere to the FDA's drug-approval letter and final printed label.  Thus, it required physicians using mifepristone to induce abortion to prescribe a 600 milligram dose and to do so only through 49 days post-LMP.  *Cordray v. Planned Parenthood Cincinnati Region*, 911 N.E.2d 871, 877–79 (Ohio 2009).  According to the Ohio Supreme Court, therefore, the statute prohibited all "off label" use of mifepristone, including the evidenced-based method that had been allowed before its passage.  *Id.* at 878.  Provided this clarification, we then vacated the district court's September 2006 summary judgment order and permanent injunction—but explicitly stated that the prior *preliminary*

---

**[2]**Planned Parenthood's most recent fees application states that their original motion requested fees for work done through October 18, 2006, but a review of the original motion shows that it also encompassed work done to prepare the fee petition—through November 30, 2006.

injunction remained in force—and remanded the case once again to the district court for a determination regarding the injunction's scope. *Planned Parenthood Sw. Ohio Region v. Strickland*, 331 F. App'x 387, 387 (6th Cir. 2009) (*Strickland II*).

Thereafter, both parties moved for summary judgment, and in January of 2011, Planned Parenthood requested clarification of the scope of the preliminary injunction. On February 4, 2011, the district court issued an order clarifying that the statute was enjoined only as it applied to instances where the health or life of the patient was at risk and denying Planned Parenthood's request for broader relief.

On May 23, 2011, the district court granted the state's motion for summary judgment on three of Planned Parenthood's claims but denied the state's summary judgment motion as to the health-or-life-exception claim. Almost two years later, Planned Parenthood filed a Second Amended Complaint seeking declaratory and injunctive relief pursuant to the single remaining claim. The state moved to dismiss. The district court denied that motion on December 2, 2014, and litigation proceeded until October 2015, when the district court stayed the case pending the Supreme Court's decision in *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016).

On March 29, 2016, almost 12 years after entry of the original preliminary injunction, the FDA amended its approval letter and final printed label for mifepristone. The updated labeling authorized the evidence-based protocol, allowing a 200 milligram dosage and prescription through 70 days post-LMP, rather than the original 600 milligram dosage and 49-day post-LMP gestational limitation. *See* U.S. Food & Drug Administration, Questions and Answers on Mifeprex, https://www.fda.gov/drugs/drugsafety/postmarketdrugsafetyinformationforpatientsand providers/ucm492705.htm (last visited June 3, 2019); Mifepristone Supplemental Approval Letter, https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2016/020687Orig1s020ltr.pdf (last visited June 3, 2019). In light of these updates, the parties agreed to dismiss the case without prejudice. On May 11, 2016, the district court ordered dismissal pursuant to Federal Rules of Civil Procedure 23(e) and 41(a). The statutory provision remains in force, requiring physicians to prescribe medication abortion according to the evidence-based protocol, as reflected in the FDA's updated approval letter and labeling.

On July 7, 2016, Planned Parenthood filed a supplementary motion for attorneys' fees, this time encompassing only work done through February 24, 2006. Planned Parenthood asserted that it spent 1,038.97 hours litigating the preliminary injunction. As in their initial fee request, Planned Parenthood included a ten-percent reduction to account for potential duplication of effort. "Given [the] delay in payment" following the original 2006 motion, Planned Parenthood requested that these fees be paid at 2016 rates to offset lost interest. Using this rate, the requested fees for the preliminary injunction litigation totaled $372,164.63. In addition, Planned Parenthood requested $10,365.35 to cover costs for the subsequent merits litigation. Thus, Planned Parenthood's total request for costs and fees amounted to $382,529.98.

The district court granted Planned Parenthood's fee request. Despite the state's opposition, the district court found both Planned Parenthood's requested hours and rates reasonable and did not apply a blanket reduction to the fees. That ruling and award are the subjects of this appeal.

## DISCUSSION

### Standard of Review

"A district court's determination of prevailing-party status for awards under attorney-fee-shifting statutes—such as 42 U.S.C. § 1988—is a legal question that we review de novo." *Radvansky v. City of Olmstead Falls*, 496 F.3d 609, 619 (6th Cir. 2007). Once a district court has determined that a party is "prevailing" and entitled to fees, an appellate court reviews that award for an abuse of discretion. *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 618 (6th Cir. 2013). A district court abuses its discretion when it "relies upon clearly erroneous factual findings, applies the law improperly, or uses an erroneous legal standard." *Id.* (quoting *Wikol ex rel. Wikol v. Birmingham Pub. Schs. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004)).

### Planned Parenthood's Prevailing-Party Status

In addressing attorneys'-fees disputes, federal courts typically abide by the "American Rule," which dictates that each party pay for its own attorneys' fees, except when explicitly provided for by statute. The Civil Rights Attorney's Fee Awards Act, 42 U.S.C. § 1988, is one

such exception aimed at "enabling vigorous enforcement of modern civil rights legislation[.]" S. Rep. No. 94-1011, at 4 (1976); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S 542, 550 (2010) ("Congress enacted 42 U.S.C. § 1988 in order to ensure that federal rights are adequately enforced."). To that end, § 1988(b) allows a "prevailing party" to collect attorneys' fees from its opponent in certain circumstances, including in cases filed under 42 U.S.C. § 1983, as was this case. *See Sole v. Wyner*, 551 U.S. 74, 77 (2007). Ordinarily, "a final decision on the merits . . . determines who prevails in the action for purposes of § 1988(b)." *Id.* at 78. Thus, "when a claimant wins a preliminary injunction and nothing more, that usually will not suffice to obtain fees under § 1988." *McQueary v. Conway*, 614 F.3d 591, 604 (6th Cir. 2010). However, we have recognized that there may be "occasional exceptions to that rule." *Id.*

In determining prevailing-party status under § 1988, "[t]he touchstone of the . . . inquiry . . . is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Sole*, 551 U.S. at 82 (internal quotation marks and citations omitted). A party achieves a material alteration when it "succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (citation omitted). However, a plaintiff cannot claim prevailing-party status if its success is ultimately "reversed, dissolved, or otherwise undone by the final decision in the same case." *Sole*, 551 U.S. at 83. Nor can a plaintiff "prevail" based on the theory that its lawsuit catalyzed a change in the defendant's behavior, thereby resolving the case; its relief must be "judicially sanctioned." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001). Finally, a plaintiff cannot establish prevailing-party status if its success is not based, at least in part, on the merits of its claim. *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 753 (6th Cir. 2002).

The parties do not dispute that the preliminary injunction Planned Parenthood obtained qualifies as a decision on the merits bearing the necessary judicial *imprimatur*. The district court first issued the injunction following a two-day evidentiary hearing and explicitly stated that an injunction was appropriate because of the agency's probable success on the merits. Furthermore, on two occasions this court has upheld part of the injunction after reviewing the merits of Planned Parenthood's claims. *Taft*, 444 F.3d at 517–18; *Strickland II*, 331 F. App'x at 387–88.

Thus, Planned Parenthood easily meets this court's requirement, articulated in *Dubuc*, that a preliminary injunction warrants an award of attorneys' fees only if it "represents an unambiguous indication of probable success on the merits." 312 F.3d at 753 (citation and internal quotation marks omitted). Additionally, Planned Parenthood's claim is not based on a "catalyst" theory, and thus it is not precluded from prevailing-party status under *Buckhannon*. 532 U.S. at 605.

Nevertheless, the state appeals the district court's determination that Planned Parenthood is a prevailing party on the grounds that Planned Parenthood's preliminary injunction does not meet the standard of "material alteration." In *Sole v. Wyner*, the Supreme Court considered whether a preliminary injunction could create the necessary "material alteration" when a final adjudication on the merits "superseded" a prior preliminary injunction. 551 U.S. at 82–84. There, the plaintiff first secured a preliminary injunction after a "hasty and abbreviated" hearing. *Id.* at 84. The preliminary injunction "expired before appellate review could be gained" and had "no preclusive effect in the continuing litigation." *Id.* The district court ultimately refused to grant a permanent injunction and rejected its own initial reasoning. *Id.* at 84–85. On review, the Supreme Court characterized the preliminary injunction, which conditionally halted enforcement of the challenged law for a single day, as "transient," *id.* at 78, "fleeting," *id.* at 83, "tentative," *id.* at 84, and "ephemeral." *Id.* at 86. The Court found that the plaintiff had not achieved any "enduring change in the legal relationship between herself and the state officials she sued," *id.* at 86 (citation, internal quotation marks, and alterations omitted), and held that "[p]revailing party status . . . does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case," *id.* at 83.

In contrast, the injunction that Planned Parenthood secured in this case precluded enforcement of the statute in certain circumstances throughout almost 12 years of litigation, and this court twice affirmed its appropriateness. Such relief hardly can be described as "transient," "fleeting," or "ephemeral." Furthermore, as opposed to the "tentative" relief in *Sole*, the injunction here resulted from a careful and thorough review of the evidence and the merits of Planned Parenthood's health-or-life-exception claim. And, most importantly, Planned Parenthood's relief never expired and was not "reversed, dissolved, or otherwise undone by the

final decision in the same case." *Sole*, 551 U.S. at 83. The state contends that upon dismissal of the case without prejudice, the preliminary injunction was revoked. But the court never issued a formal order revoking or vacating the injunction. And although, as a matter of course, an injunction may dissolve when a case becomes moot and the injunction is no longer necessary, at least two of our sister circuits have held that vacatur at that juncture is not for "lack of entitlement" and does not represent the kind of active, merits-based undoing the Supreme Court referred to in *Sole*. *See Watson v. Cty. of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002); *see also Kan. Judicial Watch v. Stout*, 653 F.3d 1230, 1240 (10th Cir. 2011) (distinguishing between vacatur on mootness grounds and vacatur as result of an adverse decision on the merits and holding that "the fact that the preliminary injunction was vacated does not deprive [a party] of their status as 'prevailing parties'"). If it did, *Sole* would have considered whether a claimant is entitled to attorneys' fees when it secures a preliminary injunction but no final decision on the merits. Instead, *Sole* explicitly left that issue open. 551 U.S. at 86.

We then considered that issue for the first time in *McQueary*, 614 F.3d at 599. There, the district court denied attorneys' fees to a plaintiff who challenged two provisions of a Kentucky law and secured a preliminary injunction enjoining their enforcement, but did not receive a final order because, before the case could proceed, the Kentucky legislature repealed the provisions, thereby mooting the dispute. *Id.* at 596. Determining that a combination of *Buckhannon*, *Sole*, and *Dubuc* did not "readily resolve[]" McQueary's case, we set about to examine "other considerations that might clarify the inquiry[.]" *Id.* at 598–99. We rejected a rule that would always provide attorneys' fees when a party attained court-ordered relief, because such an approach would grant prevailing-party status even when orders "have nothing to do with success on the merits." *Id.* at 601. Such an outcome would contradict precedent from this court and the Supreme Court. *Id.* Likewise, we rejected a "never" approach to preliminary injunctions absent a final order, finding that a ban of that nature would exclude cases when, for instance, a claimant clearly had prevailed because it "receive[d] everything it asked for in the lawsuit, and all that moots the case is court-ordered success and the passage of time." *Id.* at 599.

The state seizes upon this language to argue that Planned Parenthood cannot attain prevailing-party status because it did not receive "everything it asked for" and because its

preliminary injunction was mooted by FDA action rather than by the passage of time. But our decision in *McQueary* did not announce a strict rule. The language the state points to was merely an example, indicating that a *per se* ban would unjustly exclude certain deserving claimants. 614 F.3d at 599. *McQueary* does not require a plaintiff to achieve such comprehensive success in all instances in which cases are mooted prior to the issuance of a final judicial order. That interpretation would contradict other language in *McQueary* and conflict with prevailing-party case law from the Supreme Court and our sister circuits. 614 F.3d at 603 ("A plaintiff crosses the threshold to 'prevailing party' status by succeeding on a single claim, even if he loses on several others[.]"); *id.* at 602 ("In considering whether a claimant directly benefitted from litigation, we usually measure the plaintiff's gain based on the relief requested in his complaint, not based on the practical significance of the relief obtained. Even a single dollar in nominal damages, the pinnacle of worthless relief, qualifies as a direct benefit.") (citations omitted). *See also*, *e.g.*, *Hensley*, 461 U.S. at 427, 433 (granting prevailing-party status based on success in one of three counts); *Dearmore v. City of Garland*, 519 F.3d 517 (5th Cir. 2008) (holding that the plaintiff prevailed on basis of preliminary injunction issued pursuant to only one of three original claims); *Watson*, 300 F.3d at 1094, 1096 (holding that plaintiff prevailed on basis of preliminary injunction remedying one claim despite failing on all other claims).

Indeed, in *McQueary* the plaintiff did not obtain all the relief he requested, and his dispute was mooted as a result of legislative action, not the passage of time. Had we intended to announce a *per se* rule, we certainly could have resolved the dispute on the basis of that articulation, but we did not. Instead, we remanded the case and explained that in circumstances in which the combined application of *Buckhannon*, *Sole*, and *Dubuc* does not clearly dictate whether a plaintiff is prevailing, the necessary inquiry is "contextual and case-specific," and for the district court's consideration. 614 F.3d at 601, 604.

The state also argues that although Planned Parenthood succeeded on one claim, its preliminary injunction was so narrow as to be "miniscule" and the relief "possibly zero." Ohio asks us to deny Planned Parenthood prevailing-party status because no evidence demonstrates that any patients qualified for and made use of the exception provided by the preliminary injunction. But the magnitude of a party's obtained relief does not dictate the outcome of the

prevailing-party inquiry, *Binta B.*, 710 F.3d at 620, because the "practical significance of the relief obtained[ ]" is not our typical measure of prevailing-party status. *McQueary*, 614 F.3d at 602. We instead look to the requested relief as the proper comparator. *Id.* Thus, even a nominal damages award of one dollar qualifies a plaintiff as prevailing. *Id.* Under this generous standard, a plaintiff prevails "even if [his] limited success does not grant him the 'primary relief' he sought." *Id.* at 603 (citation omitted); *see also Binta B.*, 710 F.3d at 615–16 (granting plaintiffs prevailing-party status despite only "partially" succeeding); *Watson*, 300 F.3d at 1096.

Planned Parenthood brought four claims against the State of Ohio seeking both preliminary and permanent injunctive relief, as well as declaratory relief. It succeeded on one of these claims, the health-or-life-exception claim under the Fourteenth Amendment, and obtained the injunctive relief it requested. Nothing in our case law requires Planned Parenthood to show that patients relied upon the injunction. Moreover, relative to Planned Parenthood's claim and requested relief, its success was not so narrow as to be miniscule. That Planned Parenthood simultaneously sought to enjoin the statute in full does not undermine the fact that the as-applied injunction addressed the merits of that claim and established protection from state action. *Cf. McQueary*, 614 F.3d at 604 ("[T]he injunction bars [the state] from prosecuting [plaintiffs] . . . and thus alters the legal relationship between [the parties]."). Despite not having obtained the "primary relief" it sought, Planned Parenthood's success on this single claim, and the narrowed preliminary relief it obtained as a result, suffices to render it a "prevailing party." *Id.* at 603; *compare Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 493 (D.C. Cir. 2003) (denying prevailing-party status when preliminary injunction did not provide *any* benefit to plaintiff and did not provide *any* of the relief plaintiff originally sought).

The state also contends that Planned Parenthood attained no benefit in this case and that the legal relationship between the parties did not change because the statute remains fully in effect today. But, as the district court ruled, this line of reasoning ignores the fact that for almost 12 years the state was limited by judicial decree—its officers could not enforce the statute against physicians who prescribed mifepristone in accordance with the evidence-based protocol for patients whose health or life was threatened. The state argues that this is not enough because the preliminary injunction does not have any continued effect or benefit, but that is only because

the need for the injunction has passed. Before Planned Parenthood's lawsuit, Ohio law prohibited physicians from providing medically-induced abortion in accordance with the most up-to-date research and highest standards of medical care. Now, Ohio law allows it. Importantly, as the state repeatedly notes in its briefing, this effect did not come about due to any voluntary change by the state. *Compare Buckhannon*, 532 U.S. at 605. Rather, FDA policy shifted so that, although the letter of the statute remains the same, its effect has changed significantly. Thus, the preliminary injunction altered the relationship between Planned Parenthood and the state during the concrete period of time that the plaintiffs required the benefit of that alteration.

Planned Parenthood "does not invoke the 'catalyst' theory; [it] did not ultimately lose on the merits; the preliminary injunction . . . materially changed the relationship between the parties; and the preliminary injunction turned at least in part on the district court's assessment of the merits." *McQueary*, 614 F.3d at 598–99. Thus, just as in *McQueary*, the district court's duty here was to engage in a "contextual and case-specific inquiry." *Id.* at 601, 604. It did just that and determined that Planned Parenthood prevailed because it succeeded on a significant issue such that it achieved some benefit, and because its success conferred a lasting change in the legal relationship between the parties. We agree with the district court's assessment.

**Fee Reduction Relative to Degree of Success**

The state next asks us to consider whether the district court erred in awarding Planned Parenthood $382,529.98 in attorneys' fees and costs without reducing the overall award relative to Planned Parenthood's degree of success. The state suggests that we should drastically reduce that amount to reflect what the state contends was a "temporary and minimal" victory.

A fee is reasonable under § 1988 if it is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue*, 559 U.S. at 552. The Supreme Court has found it especially important to provide attorneys' fees to prevailing parties where success may not result in a significant award of damages, thus limiting the availability of access to effective counsel. *City of Riverside v. Rivera*, 477 U.S. 561, 576–77 (1986). On the

other hand, a fee should not "produce windfalls to attorneys." *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

"There is no precise rule or formula" for establishing a proper fee for a prevailing party, and the inquiry becomes particularly murky where a plaintiff succeeds on only a portion of its claims. *Hensley*, 461 U.S. at 436. Given the district court's firsthand knowledge of the litigation and surrounding circumstances and the fact that the determination is largely a fact-intensive analysis, we give the district court's ruling substantial deference. *See Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001). But, a district court's discretion is not absolute; the court must provide a "concise but clear explanation of its reasons for the fee award." *Binta B.*, 710 F.3d at 628 (quoting *Hensley*, 461 U.S. at 437). We reverse only in the event that we have a "definite and firm conviction that the trial court committed a clear error of judgment." *Paschal v. Flagstar Bank*, 297 F.3d 431, 434 (6th Cir. 2002) (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)).

Having determined that Planned Parenthood was entitled to attorneys' fees, the district court set to the task of assessing a "reasonable" award. *See Cramblit v. Fikse*, 33 F.3d 633, 635 (6th Cir. 1994) (*per curiam*). The district court's first step was to decide upon the appropriate lodestar, or "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Rivera*, 477 U.S. at 568 (citation omitted). Planned Parenthood's motion sought fees for 1,038.97 hours, which accounted for work done by six attorneys, a law clerk, and a paralegal over the course of approximately 18 months.

The district court addressed the reasonableness of these hours, relying upon the 12 factors laid out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir 1974), and endorsed by Congress when it passed § 1988, by the Supreme Court in *Blanchard v. Bergeron*, 489 U.S. 87 (1989), and by this court in *Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005).[3] In particular, the district court found that the novel nature of the constitutional claim, the

---

[3]The factors identified in *Johnson* include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment due to acceptance of the case by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the

abbreviated time frame for a full hearing and briefing, as well as the labor and skill required by the case all counseled toward finding Planned Parenthood's hours reasonable. Moreover, the district court determined that Planned Parenthood more than appropriately accounted for any potential duplication of effort by conceding a ten-percent reduction of fees in its request.

The state does not take explicit issue with the district court's ruling regarding the appropriateness of the hours. However, it contends that the district court erred by not reducing the overall award because Planned Parenthood failed in all but one of its claims and received only some of the relief it initially sought. Though the Supreme Court has stated that the degree of success is a "critical factor" in determining a fee award, the Court has not mandated that district courts apply a fee reduction in cases where a plaintiff achieves only partial success. *Hensley*, 461 U.S. at 436. *Hensley* identified two potential options for district courts determining an award following a partial success, saying that a district court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* However, *Hensley*'s only mandate is that district courts *consider* the relationship between a plaintiff's success and their award and provide an explanation of its reasoning.

The district court here explained that "the proportional reduction urged by Defendants already is embedded in [Planned Parenthood's] fee request, which includes only fees through the prosecution of the preliminary injunction—through the first appeal (*Taft* [])—and the prosecution of the present Motion." During this period, Planned Parenthood's efforts focused predominantly on their successful litigation to obtain injunctive relief based on their health-and-life-exception claim, and on defending that injunction. The state contends that Planned Parenthood's award should have been reduced relative to their success *within* this time period. Under this theory, the state suggests that Planned Parenthood should receive only "nominal" fees for these efforts because *Taft* narrowed the scope of the injunction, was "undeniably a setback," and represented a loss.

---

experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship between the attorney and the client; and (12) awards in similar cases. 488 F.2d at 717–19.

Tellingly, the state cites no precedent in support of this theory. It points to one unpublished case: *D.L.S., Inc. v. City of Chattanooga*, 149 F.3d 1182 (6th Cir. 1998) (Table) (*per curiam*). But unpublished opinions do not bind this court. *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 283 (6th Cir. 2016). Moreover, to the extent *D.L.S.* is at all persuasive here, it merely offers further confirmation that this court should defer to the district court's assessment of the appropriate fee award. The district court in *D.L.S.* refused to grant the prevailing plaintiff's fee request in full because the plaintiff failed to distinguish between its work on claims it won and its work on failing claims. The district court then, in its discretion, determined the appropriate relief relative to the plaintiff's success.

Here, Planned Parenthood limited the time period for which it requested fees, and in doing so accounted for and divided out work done on the claim on which it prevailed—the health-and-life-exception claim—and distinguished it from the hours counsel expended on the remaining unsuccessful claims. To the extent that the state's arguments can be understood to suggest that Planned Parenthood should have divided out and limited its hours further because, during this time, Planned Parenthood also expended work hours on its other claims, they are mistaken. Such division and further reduction is unnecessary because the successful and unsuccessful claims arose from a "common core of facts." *Hensley*, 461 U.S. at 435. Although it cannot recoup its fees and expenses for the entirety of the litigation, Planned Parenthood can recover for some work "devoted generally to the litigation as a whole." *Id.*

Furthermore, the district court found that Planned Parenthood "embedded" in their fee request an appropriate reduction relative to its success by requesting fees only for work done through February 24, 2006, the date this court issued its initial decision in *Taft*, and prior to the subsequent amendment. Planned Parenthood originally requested $475,886.77, following the district court's order enjoining the Act in full. Their renewed motion reduced that request, however, eliminating hours worked from March 2006 through November 2006. Additionally, Planned Parenthood did not seek fees for the work it did in arguing the appropriate scope of the injunction on remand, or the hours expended in briefing related to the injunction in front of this court for arguments in *Strickland II*, 331 F. App'x. at 387. The district court's award of $382,529.98, then, effectively applied a 20 percent reduction from Planned Parenthood's initial

request—in addition to denying fees for all work done in maintaining the partial preliminary injunction for the next decade.

We have found abuse of discretion when a court reduced a fee award but did not explain its reasoning for the selected proportion of the reduction. *See, e.g., Binta B.*, 710 F.3d at 639–40 (finding court's "brief characterization" of complex consent decree insufficient to explain 20% reduction rather than other potential reduction proportions). Here, the court not only engaged in an in-depth description of Planned Parenthood's success—in deciding the prevailing-party question and again in its fees analysis—but also explained why that success warranted no further fee reduction. It considered the scope of Planned Parenthood's success, explaining that "the Court cannot conclude that the relief granted was limited in comparison to the scope of the litigation as a whole . . . . [Planned Parenthood] was successful in convincing the Court to enjoin enforcement of the Act to the extent that its application was unconstitutional." (internal quotation marks omitted). It further considered the fee reasonable in light of both that success and the 12 *Johnson* factors. Finally, the district court provided justification for its decision. There is no evidence that its reasoning suffered from a "clear error of judgment." *Paschal*, 297 F.3d at 434. Thus, the district court did not abuse its discretion in choosing not to implement a blanket reduction to the fee award.

**Reasonable Rate for Hours Worked**

The state's final issue on appeal addresses the rate Planned Parenthood relied on to calculate the lodestar and that the district court approved. The state contends that the district court abused its discretion in applying 2016 rates for work completed between 2004 and 2006.

"[T]he district court has the discretion to choose either current or historical rates so long as it explains how the decision comports with the ultimate goals of awarding reasonable fees." *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 617 (6th Cir. 2007). It is true, as the state points out, that we have not mandated the application of current rates, nor do we necessarily prefer current rates over historic ones. *Id.* It also is true, however, as we expressed in *Gonter*, that "the application of current rates [i]s within the contemplation of the fee statute." *Id.* (citation and internal quotation marks omitted). The critical question, then, is whether the district court

provided sufficient justification for its decision to apply 2016 rates to Planned Parenthood's work and whether, in doing so, it considered the underlying goals of awarding reasonable fees. *Id.* at 617.

The district court relied on the Supreme Court's decisions in *Hensley* and in *Missouri v. Jenkins*, 491 U.S. 274 (1989), to guide its determination about the reasonableness of Planned Parenthood's requested rates. It found that this caselaw supported an adjustment to current rates to account for the delay in payment. Moreover, the district court noted that caselaw acknowledges that this sort of adjustment comports with the underlying purposes of § 1988. *Id.* The district court accounted for the "significant delay" in payment between 2006 and 2016, compared to the two-year delay in *Gonter*. There, in considering work done between 2001 and 2003, we approved the district court's award of a fee adjustment to 2004 rates. The district court in this case considered the decision in *Gonter* and found that, for Planned Parenthood, "an adjustment from 2006 rates to 2016 rates [is] eminently reasonable[.]"

Second, the district court compared the requested rates with those suggested by the rubric laid out by a 1983 committee of attorneys convened by Judge Carl Rubin, which determined reasonable fee rates for Cincinnati attorneys. The district court found that the 2016 rates Planned Parenthood requested were "consistent with, even slightly lower than" the recommended rates. Taking into account the goals of § 1988, the Supreme Court's admonishment that rates should not be reduced simply because "the rights involved may be nonpecuniary in nature," *Hensley*, 461 U.S. at 447, and the *Johnson* factors, the district court's decision to award fees based on 2016 rates more than meets the standard of a "concise but clear" explanation of the court's reasoning. *Id.* at 437. The state thus has failed to make a showing that the district court committed clear error in its application of the law.

## CONCLUSION

The district court correctly ruled that Planned Parenthood "prevailed" in this litigation and sufficiently explained its rationale for applying 2016 rates and refusing to apply a blanket reduction to the fee award. The provisions in 42 U.S.C. § 1988 aim to ensure the availability of competent and effective counsel for the enforcement of civil rights and thus allow for reasonable

fees to prevailing parties. Preliminary relief that provides a lasting benefit to a party based on the substantive merits of at least one of that party's claims suffices to meet the generous standard used to determine prevailing-party status. Planned Parenthood's more-than-decade-long preliminary injunction qualifies as such a lasting benefit. The district court appropriately explained its reasoning for its decision regarding the final fee award and did not abuse its discretion in granting that award.

We **AFFIRM** the judgment of the district court.