NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0272n.06

Case No. 22-4007

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 13, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| KYLE BOBAY, | ) | |
| Plaintiff-Appellant, | ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| WRIGHT STATE UNIVERSITY, et al., | ) | OHIO |
| Defendants-Appellees. | ) | OPINION |
| | ) | |

Before: GILMAN, BUSH, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** After refusing the COVID-19 vaccine for religious reasons, Dr. Kyle Bobay faced termination from his medical residency program. To stave off that fate, and with the clock ticking, Bobay sought injunctive relief in federal court, including a temporary restraining order. The district court granted his request for temporary relief, barring defendants from firing Bobay for two weeks. Not long thereafter, Bobay's employer granted his request for a religious exemption. The district court in turn dissolved the TRO.

Believing that he was a prevailing party for purposes of 42 U.S.C. § 1988, Bobay moved for attorney's fees. The district court denied the motion, and Bobay promptly appealed. Because the TRO merely preserved the status quo and did not alter the rights between the parties, we affirm the district court's judgment.

**I.**

Dr. Kyle Bobay was a physician in Wright State University's Emergency Medicine Residency Program. Bobay was placed at Kettering Health Network to further his training. But just as he was inking his placement agreement, the COVID-19 pandemic began to sweep the nation.

Over time, vaccines were developed to combat the virus. Kettering instituted a vaccination requirement for its medical staff. That posed a problem for Bobay because his religious beliefs prohibit receiving the COVID-19 vaccine. Bobay requested a religious exemption. Kettering, however, denied his request and subsequent appeals.

Eventually, Kettering gave Bobay an ultimatum: get vaccinated or face termination. With the vaccination deadline approaching, Bobay appealed his termination notice to Kettering and Wright State. After some back and forth, Kettering told Bobay that its decision would be reviewed by a vice president. Having not received a response, and seemingly without any other recourse, Bobay, on the eve of his termination date, filed a complaint in federal court. Named as defendants in the suit were Wright State, its Board of Trustees, and Kettering. Invoking 42 U.S.C. § 1983, Bobay alleged that defendants were infringing upon Bobay's First Amendment right to the free exercise of religion. He sought declaratory relief as well as a permanent injunction preventing defendants from denying his request for a religious exemption and from terminating his position as a resident physician.

With the termination deadline hours away, Bobay moved for a TRO to preserve his employment status until the preliminary injunction could be considered. After a brief telephone conference, the district court granted the motion. That same day, Kettering informed the court

about a new development: it had approved Bobay's religious exemption. In response, the court dissolved the TRO.

Yet that did not end the matter. Believing that his success in securing a TRO rendered him a prevailing party under 42 U.S.C. § 1988, Bobay moved for over $40,000 in attorney's fees. The district court denied the motion, reasoning that the TRO did not award Bobay "relief on the merits of his claims." Instead, the court explained, its purpose was "to preserve the status quo." Bobay timely appealed.

## II.

Section 1988 is an exception to the general rule that winners and losers pay their own legal fees. *Roberts v. Neace*, 65 F.4th 280, 284 (6th Cir. 2023). It instructs that courts may grant "a reasonable attorney's fee" to the "prevailing party" in a 42 U.S.C. § 1983 action. *Id.* (citing 42 U.S.C. § 1988(b)). This phrase "prevailing party" is a term of art. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001). To claim that status, the litigant must achieve a "judicially sanctioned change in the legal relationship of the parties." *Id.* at 605.

Whether a plaintiff has cleared that bar is not always easy to discern in cases that expire before a final judgment. An example is a case in which a litigant prevails "in one sense (by receiving a preliminary injunction)" yet fails to "obtain a final judgment when the case becomes moot." *Roberts*, 65 F.4th at 284 (citation omitted). In those instances, our inquiry becomes "contextual and case-specific," guided by a few general principles. On one hand, a preliminary injunction that is designed to "preserve the status quo relationship of the parties" will ordinarily not be enough by itself. *Id.* On the other hand, a preliminary injunction that "mainly turns on the likelihood-of-success inquiry" and affects the relationship in a "material and enduring" way can

3

vault a litigant over the § 1988 bar. *Id.* That is the case if the injunction represents an "unambiguous indication of probable success on the merits." *Dubuc v. Green Oak Township*, 312 F.3d 736, 753 (6th Cir. 2002) (citation omitted).

This appeal, of course, relates back to the granting of a TRO, not a preliminary injunction nor a final judgment. And, as Bobay acknowledges, that he ultimately achieved the relief he sought—an exemption from the vaccine mandate—could not serve as the basis for a fee award, given the voluntary nature of that relief. *Buckhannon*, 532 U.S. at 605 (requiring a "prevailing party" to achieve a "judicially sanctioned change in the legal relationship of the parties."). His request therefore centers entirely upon his obtaining a TRO.

We review the district court's denial of fees de novo. *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 619 (6th Cir. 2007). And after de novo review, we agree with the district court.

A. The limited nature and duration of a TRO weigh heavily against Bobay's fees request. *See Roberts*, 65 F.4th at 284 (inquiring into whether the injunction at issue was "enduring"). Recall a TRO's purpose. "Applicants for injunctive relief" may be faced with the "possibility that irreparable injury will occur before the hearing for a preliminary injunction" can be held. 11A Wright & Miller, Fed. Prac. & Proc. § 2951 (3d ed. 2023). Federal Rule of Civil Procedure 65(b) offers litigants a mechanism to allay that concern. Under Rule 65(b), a plaintiff may seek a TRO— an order "designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." *Id.* TROs are "sharply limited [in] duration" (typically 14 days), one of the primary factors differentiating a TRO from a preliminary injunction. *Id.* § 2953.

Due to its narrow purpose and limited duration, we generally lack jurisdiction to hear an appeal of a district court's decision to grant or deny a TRO. *Ne. Ohio Coal. for Homeless & Serv.*

*Emp. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1005 (6th Cir. 2006). TROs "usually terminate with a prompt ruling on a preliminary injunction, from which the losing party has an immediate right of appeal." *Id.* So rather than hearing an appeal from a TRO, we wait for an appeal of the preliminary injunction. By that point, after all, the district court will have "pass[ed] on the question presented with full development of the facts and the law." *Id.* (summarizing *Dilworth v. Riner*, 343 F.2d 226, 229 (5th Cir. 1965)).

Preliminary injunctions and TROs share the same four factors in determining whether to grant the relief: (1) the movant's likelihood of success on the merits; (2) irreparable injury to the movant; (3) substantial harm to others caused by the temporary order; and (4) the public interest. *Id.* at 1009. In balancing these factors in the TRO context, the analysis is often driven by the more equitable factors in the test than a claim's merits, given a TRO's early starting and ending points. *See, e.g.*, *Webster v. Sowders*, 846 F.2d 1032, 1036 (6th Cir. 1988); *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996) ("[T]he purpose of a TRO . . . is to preserve the status quo so that a reasoned resolution of a dispute may be had."). Indeed, the threshold nature of a TRO was on full display here. Upon receiving the complaint, the district court learned of Bobay's impending termination deadline. The court moved quickly—it held a telephone conference the next day and, soon thereafter, issued a two-page TRO. In awarding temporary relief, the district court emphasized the constraints it was operating under, recognizing that the parties' arguments were "limited by time" and "raised a good deal of factual information that [was] not yet on the record."

With little time to ponder the case, the district court turned its attention to the third TRO factor: whether the temporary order would cause harm to others. On that factor, the district court

saw "absolutely no prejudice to the Defendants." So the district court entered a TRO, in its words, to lay a "blanket of status quo over the facts" as much as "humanly possible."

Bobay's likelihood of success, on the other hand, was scarcely a factor; the district court barely brushed the merits of Bobay's underlying claim. *See Dubuc*, 312 F.3d at 753 (declining prevailing-party status because there was no "unambiguous" indication of probable merits success). The court began by acknowledging the limited nature of the information before the court. For instance, a key document at the center of the dispute, Bobay's letter to his employer addressing the vaccine mandate, "quite frankly lack[ed] a lot of clarity." *Cf. Dahl v. Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728, 731–32, 735 (6th Cir. 2021) (per curiam) (discussing a free-exercise challenge to a vaccine mandate). Kettering's response to Bobay's exemption request was similarly unhelpful, in the court's eyes, falling far "short of sufficient clarity." The insufficient record, coupled with the negligible discussion of the merits, confirms that the likelihood of success did not drive the court's decision to issue a TRO.

Because the TRO "merely preserved the status quo until time allowed for a closer look," *Roberts*, 65 F.4th at 284, Bobay has failed to demonstrate prevailing-party status in a manner sufficient to justify an award of attorney's fees. *Compare id.* (explaining that a "hastily entered" injunction points against enduring relief), *with Tenn. State Conf. of NAACP v. Hargett*, 53 F.4th 406, 411 (6th Cir. 2022), *petition for cert. filed*, (U.S. Feb. 16, 2023) (No. 22-773) (upholding a prevailing-party-status award where the district court's 42-page opinion supporting the injunction was an "emphatic" indication of probable success on the merits); *see also Sole v. Wyner*, 551 U.S. 74, 84 (2007) (declining to award prevailing-party status where the preliminary injunction hearing at issue was held one day after the complaint was filed and was "necessarily hasty and abbreviated"). That perhaps should come as no surprise to Bobay, who acknowledged the absence

of any decision from this Court awarding a litigant prevailing-party status based solely on a TRO. *Cf. Webster*, 846 F.2d at 1036 (no prevailing-party status where the injunction was "ordered because the balance of equities greatly favor[ed] the plaintiff"). That is not to say a TRO could never garner a prevailing-party award. *See, e.g.*, *Common Cause Ga. v. Georgia*, 17 F.4th 102, 107–08 (11th Cir. 2021). But this is not the case that proves the exception to the rule.

B. Bobay sees things differently. To begin, he reads the TRO as doing more than merely safeguarding the state of affairs. To his mind, the TRO was "based on the merits" of his claim, analogizing to *Planned Parenthood Southwest Ohio Region v. DeWine*, 931 F.3d 530 (6th Cir. 2019). There, a preliminary injunction rendered the plaintiff a prevailing party in part because both sides had accepted that the injunction, issued after a two-day evidentiary hearing, was a decision "on the merits." *Planned Parenthood*, 931 F.3d at 539. In fact, the injunction had been twice upheld on appeal after a review of the merits. *Id*. Here, on the other hand, we are hard-pressed to find in the record any "indication of probable success on the merits," let alone an "unambiguous" one. *See Dubuc*, 312 F.3d at 753 (citation omitted).

Next, Bobay points to a smattering of cases that awarded prevailing-party status based on a TRO. Those cases do not move the needle. *Common Cause* involved a hotly contested 2018 general election in Georgia where the plaintiff there moved for a TRO regarding the State's provisional-ballot scheme. 17 F.4th at 105. The district court granted the motion. *Id.* at 107. This grant, the appeals court explained, was "relief on the merits" because the plaintiff had shown a "substantial likelihood of proving that the Secretary's failure to properly maintain a secure voter registration system" would infringe voting rights. *Id.* In our case, on the other hand, the order in question simply preserved the employment relationship between Bobay and his residency program to allow time for the court to consider the case's merits.

No more availing is *LSO, Ltd. v. Stroh*, 205 F.3d 1146 (9th Cir. 2000). There, the district court issued a TRO barring state officials from interfering with the plaintiff's art exhibition and trade show. *Id.* at 1150, 1152. Although the appeals court held that this was sufficient to garner prevailing-party status, that was because the order did "more than preserve the status quo." *Id.* at 1161. Not so here, where the order simply triggered a holding pattern.

*      *      *      *      *

We would be remiss not to acknowledge the predicament Bobay faced. Bobay's refusal to comply with a vaccination mandate that he believed violated his religious belief had him on the brink of termination. When all else failed, he turned to the federal courts. His efforts earned him a 14-day reprieve from termination from the district court. And it was not long before Kettering granted his religious exemption, one it had repeatedly declined to grant. Through all of this, Bobay incurred significant legal fees. But without more indicators of his success on the merits of his claim, our case law precludes awarding him prevailing-party status.

We affirm the district court's judgment.