RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0240p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

TENNESSEE STATE CONFERENCE OF THE NAACP;
DEMOCRACY NASHVILLE-DEMOCRATIC COMMUNITIES;
EQUITY ALLIANCE; ANDREW GOODMAN FOUNDATION;
LEAGUE OF WOMEN VOTERS OF TENNESSEE; LEAGUE
OF WOMEN VOTERS OF TENNESSEE EDUCATION FUND;
AMERICAN MUSLIM ADVISORY COUNCIL; MID-SOUTH
PEACE & JUSTICE CENTER; MEMPHIS Central Labor
COUNCIL; ROCK THE VOTE; HEADCOUNT,

>                    *Plaintiffs-Appellees*,

      *v.*

> No. 21-6024

TRE HARGETT, in his official capacity as Secretary of
State of Tennessee; MARK GOINS; in his official
capacity as Coordinator of Elections for the State of
Tennessee; TENNESSEE STATE ELECTION COMMISSION;
DONNA   BARRETT,   JUDY   BLACKBURN,   MIKE
MCDONALD, GREGORY DUCKETT, JIMMY WALLACE,
TOM WHEELER, and KENT YOUNCE, in their official
capacities   as   members   of   the   State   Election
Commission,

>                    *Defendants-Appellants*.

─────────────────

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:19-cv-00365—Aleta Arthur Trauger, District Judge.

Argued: July 20, 2022

Decided and Filed: November 16, 2022

Before: KETHLEDGE, BUSH, and NALBANDIAN, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** Matthew D. Cloutier, OFFICE OF THE TENNESSEE ATTORNEY GENERAL,
Nashville, Tennessee, for Appellants. Pooja Chaudhuri, LAWYERS' COMMITTEE FOR

CIVIL RIGHTS UNDER LAW, Washington, D.C., for Appellees Tennessee State Conference of the NAACP, et al.  David M. Rosborough, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York, for Appellees League of Women Voters of Tennessee, et al.  **ON BRIEF:**  Matthew D. Cloutier, Janet M. Kleinfelter, Alexander S. Rieger, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellants.  Pooja Chaudhuri, Ezra D. Rosenberg, LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW, Washington, D.C., Ira M. Feinberg, HOGAN LOVELLS US LLP, New York, New York, Taylor A. Cates, BURCH, PORTER & JOHNSON, PLLC, Memphis, Tennessee, Yael Bromberg, BROMBERG LAW LLC, New York, New York, for Appellees Tennessee State Conference of the NAACP, et al.  David M. Rosborough, Sophia Lin Lakin, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York, Stella Yarbrough, ACLU FOUNDATION OF TENNESSEE, Nashville, Tennessee, Danielle Lang, Molly E. Danahy, CAMPAIGN LEGAL CENTER, New York, New York, Michelle Kanter Cohen, FAIR ELECTIONS CENTER, Washington, D.C., William H. Harbison, Hunter C. Branstetter, SHERRARD ROE VOIGT & HARBISON, Nashville, Tennessee, for Appellees League of Women Voters of Tennessee, et al.

KETHLEDGE, J., delivered the opinion of the court in which BUSH, J., joined. NALBANDIAN, J. (pp. 8–12), delivered a separate dissenting opinion.

--------

**OPINION**

--------

KETHLEDGE, Circuit Judge.  In this case the district court issued a preliminary injunction that, for purposes of litigation in the district court, was final in all but name.  Seven months later, the Tennessee legislature repealed the statutory provisions that the district court had enjoined, thereby rendering the case moot.  We hold that the plaintiffs were prevailing parties under 42 U.S.C. § 1988 and affirm the district court's award of attorneys' fees.

I.

A.

In May 2019, Tennessee enacted a law, H.B. 1079, imposing a raft of new requirements upon persons or organizations conducting voter-registration activities in the State.  Among many other things, the law required such individuals to register with the State; to complete state-administered "training" about "the laws and procedures governing the voter registration process"; to file a "sworn statement" stating that the person or organization "shall obey"

Tennessee's voter-registration laws; and to return "completed" voter-registration forms within 10 days of "the voter registration drive." Tenn. Code Ann. § 2-2-142 (2019). Failure to comply with any of these requirements was a misdemeanor.

The plaintiffs promptly challenged the new law in two separate suits in district court. They argued in essence that the law significantly burdened their rights of speech and association, in violation of the First Amendment, and that the law was unconstitutionally vague. As relief, they sought a declaration that the law was unconstitutional and a permanent injunction against its enforcement.

In August 2019, the plaintiffs moved for a preliminary injunction, as to which the parties filed lengthy briefs with numerous exhibits attached. The district court granted the motions in September, with a 42-page memorandum explaining the court's reasoning. (Technically, two groups of plaintiffs filed two motions, as to which the court filed two memos; but the motions and memos for both were substantially the same.) Most of the court's memorandum addressed the plaintiffs' likelihood of success on the merits of their claims. The court stated that the plaintiffs had "provided a great deal of evidence" showing how the challenged provisions would burden their speech and associational rights; whereas the defendants had offered "little, if any, evidence" in support of the Act's requirements, "despite having had an opportunity" to present that evidence. For example, the defendants "offered no evidence of any reason" to require the operator of a voter-registration drive to report its activities to the State. "Particularly without justification[,]" the court said, was "the requirement that the operators of voter registration drives file sworn statements confirming that they will comply with the law. The law is the law already; no one has to swear to follow it in order for it to apply." *Tennessee State Conference of NAACP v. Hargett*, 420 F. Supp. 3d 683, 704–05 (M.D. Tenn. 2019). Hence that requirement, in the court's view, "merely add[ed] an additional regulatory hoop for the operator of a voter registration drive to jump through." *Id.* The court also held that the plaintiffs were likely to prevail on the merits "for a second reason—namely, the vagueness about the scope and nature of [the Act's] requirements." *Id.* at 705.

After some two-dozen pages in this vein, the court found that H.B. 1079 imposed "an onerous and intrusive regulatory structure for problems that, insofar as they are not wholly speculative, can be addressed with simpler, less burdensome tools." The court thus found that the plaintiffs were likely to succeed on their claims. In a separate document, the court "ordered" the defendants "not to take any steps to implement" or otherwise enforce the challenged provisions of H.B. 1079. The defendants chose not to appeal that order.

Seven months later, the Tennessee General Assembly passed legislation to repeal those same provisions. Governor Lee signed the bill into law in April 2020. With the new law in place, the plaintiffs had no claims left to pursue. Six months later, the district court approved the parties' stipulation to dismiss the case without prejudice.

B.

The plaintiffs thereafter moved for attorneys' fees under 42 U.S.C. § 1988, which allows for an award of fees to the "prevailing party" in suits like this one. The district court granted the motion, reasoning that, by obtaining the preliminary injunction, the plaintiffs had "prevailed for the purposes of § 1988(b), just as they prevailed in the ordinary sense of the word." But the court reduced the amount of the fee award from the amounts requested—by 39% for one set of plaintiffs and 28% for the other—finding that some of the hourly rates were too high, or some of the time entries too vague, for example. This appeal followed.

II.

The defendants challenge only the district court's determination that the plaintiffs were prevailing parties under 42 U.S.C. § 1988. We review that decision de novo. *Miller v. Caudill*, 936 F.3d 442, 447 (6th Cir. 2019).

Under § 1988, the "prevailing party" in a federal civil-rights action may recover a "reasonable attorney's fee as part of the costs of litigation." 42 U.S.C. § 1988. The statute does not define "prevailing party," but the caselaw does to some extent. To be eligible for that status, a plaintiff must have "been awarded some relief by the court." *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 603

(2001). That relief must be "material," meaning that it must directly benefit the "plaintiff by modifying the defendant's behavior toward him." *McQueary v. Conway*, 614 F.3d 591, 598 (6th Cir. 2010) (cleaned up). And where (as here) that relief takes the form of a preliminary injunction, that relief must not have been "reversed, dissolved, or otherwise undone by the final decision in the same case." *Sole v. Wyner*, 551 U.S. 74, 83 (2007). Those requirements are undisputedly met here: the district court entered a preliminary injunction that enjoined the defendants from enforcing H.B. 1079 against them; and that injunction was never reversed, dissolved, or even vacated after the plaintiffs' voluntary dismissal of the case.

What the parties do dispute is whether the court's relief was "enduring" enough to support prevailing-party status. *See Sole*, 551 U.S. at 74. The defendants say it was not: in their view, the preliminary injunction provided relief to the plaintiffs for only seven months, until the Tennessee legislature itself repealed the challenged provisions. Thus, they say, the "court-ordered" relief in this case, *Buckannon*, 532 U.S. at 604, was only temporary.

The caselaw includes a spectrum of cases in which injunctive relief was deemed "fleeting" on one end, *Sole*, 551 U.S. 83, and enduring on the other. Injunctive relief proved fleeting in *Sole*, where the district court entered a "hasty" injunction in response to the plaintiff's emergency motion the day after the suit was filed. The court later changed course and entered a final judgment in favor of the defendants. *Id*. at 84. Hence in that case the defendants, rather than the plaintiff, prevailed. *Id.* at 86. In *Miller v. Caudill*, 936 F.3d 442 (6th Cir. 2019), by contrast, the relief afforded by a preliminary injunction was enduring. There, the preliminary injunction required a county clerk to issue marriage licenses to the plaintiffs. 938 F.3d at 446. Although that injunction was soon vacated as moot, the clerk could not revoke the licenses after she issued them. *Id.* at 449. Thus the plaintiffs there were deemed prevailing parties.

The relief the plaintiffs obtained here is distinguishable from the "fleeting" relief in *Sole*. Here, the relief came four months after the suits were filed, after full briefing and an opportunity for each side to present evidence supporting its position; and the court never vacated or dissolved the injunction. Moreover, to a significant extent, the court's relief was "irrevocable" in the same sense that the relief in *Miller* was: as a result of the preliminary injunction in this case, plaintiffs

were able to conduct voter-registration drives for seven months during the runup to the 2020 election, unburdened by the requirements of H.B. 1079. Those drives, and the voter registrations that resulted from them, are as "irrevocable" as the marriage licenses in *Miller* were. At least to that extent, therefore, the relief afforded to the plaintiffs was enduring.

The case closest to this one, in our view, is *Green Party of Tennessee v. Hargett*, 767 F.3d 533, 553 (6th Cir. 2014). There, as here, the plaintiffs challenged certain provisions of a Tennessee election law. After the district court entered judgment, but while the case was on appeal, the Tennessee legislature amended the provisions at issue. *Id.* at 541. Our court said that, "when plaintiffs clearly succeeded in obtaining the relief sought before the district court and an intervening event rendered the case moot on appeal, plaintiffs are still prevailing parties for the purposes of attorney's fees for the district court litigation." *Id.* at 552 (cleaned up). Thus, we held, "[t]he plaintiffs have *not* been stripped of their prevailing party status by the legislature's decision to amend the relevant statute two months after the district court issued its order but before the appeal was heard." *Id.* at 553.

The principal difference between this case and *Green Party* is that, here—when the Tennessee legislature amended H.B. 1079 so as to render the case moot—the court had not yet entered a judgment in the plaintiffs' favor. But the decision in *Green Party* was likewise not final—because we had not reviewed it yet. As to finality, then, the difference between the two cases is one of degree. Here, the district court's 42-page opinion in support of its injunction was an emphatic and "unambiguous indication of probable success on the merits" of the plaintiffs' claims. *McQueary*, 614 F.3d at 598 (cleaned up). And the prospect that—as in *Sole*—the court would reverse course, and enter judgment in favor of the defendants, was remote in the extreme.

*Green Party* shows that injunctive relief awarded before the litigation reaches its conclusion can, depending on the circumstances, be deemed enduring for purposes of prevailing-party status under 42 U.S.C. § 1988. A preliminary injunction that, as a practical matter, concludes the litigation in the plaintiffs' favor in the district court, and that is not challenged on appeal, is—on this record at least—enduring enough to support prevailing-party status under § 1988. We therefore hold that the plaintiffs were prevailing parties here.

\*      \*      \*

The district court's September 28, 2021 order awarding fees is affirmed.

---

**DISSENT**

---

NALBANDIAN, Circuit Judge, dissenting.   State-voluntary action mooting a case prevents plaintiffs from prevailing under 42 U.S.C. § 1988(b).   The Supreme Court held this. We've followed this.   So the grant of attorney's fees here sidesteps § 1988(b)'s guardrails. Following Supreme Court precedent and this Circuit's framework, I would instead hold that plaintiffs who receive a preliminary injunction against enforcement of a statute aren't "prevailing parties" if a state-defendant voluntarily repeals the statute before a merits decision.   And even if that backstop did not apply (it does), I would hold that the Plaintiffs weren't prevailing parties because they didn't get all the relief they asked for.   For these narrow yet important reasons, I respectfully dissent.

**I.**

I don't write on a blank slate.   Several cases have come before us, each relying on *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001).   In effect, *Buckhannon* constrained prevailing-party relief by rejecting the so-called "catalyst theory."[1]   532 U.S. at 605.   And in denying that theory, the Supreme Court held that plaintiffs can't get attorney's fees under § 1988(b) when defendants, not the litigation itself, invalidate a challenged law.   *Id.*   Thus, no plaintiff can "prevail[]" when a state-defendant voluntarily voids a challenged law before a court decides a case's merits.   *Id.* at 603, 605 (citation omitted).   So even if plaintiffs obtain the results they "sought to achieve by the lawsuit," "[a] defendant's voluntary change in conduct . . . lacks the necessary judicial *imprimatur* on the change."   *Id.* at 605.

And we have incorporated *Buckhannon*'s backstop into our attorney's fees framework for preliminary injunctions.   *McQueary v. Conway*, 614 F.3d 591, 601 (6th Cir. 2010)

---

[1]That theory "posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct."   *Buckhannon*, 532 U.S. at 601.

("*McQueary I*"). *McQueary I* held that our analysis "will generally counsel against fees in the context of preliminary injunctions." *Id.* In reaching that conclusion, we first recognized the "preliminary" nature of the relief. *Id.* We also reiterated the limitation imposed by *Buckhannon*: "[A] prevailing-party victory must create a lasting change in the legal relationship between the parties and not merely 'catalyze' the defendant to voluntary action[.]" *Id.*

Under *McQueary I*, plaintiffs who obtain a preliminary injunction cannot escape *Buckhannon*'s backstop. That's why we have consistently applied *Buckhannon* in preliminary-injunction cases. *See, e.g.*, *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 539, 542 (6th Cir. 2019) (concluding that a claim was "not precluded from prevailing-party status under *Buckhannon*" because a federal agency, not the state-defendant, mooted the case by repealing a law (citation omitted)); *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 552 (6th Cir. 2014) ("Thus, if a defendant voluntarily changes its conduct during the course of litigation, thereby mooting the plaintiff's case, the plaintiff will not be considered a prevailing party even though he or she may have obtained the relief sought." (citation omitted)); *McQueary v. Conway*, 508 F. App'x 522, 524 (6th Cir. 2012) ("*McQueary II*") (affirming that the state legislature's "voluntary conduct" repealing a statute after plaintiffs obtained a preliminary injunction didn't "by itself serve as the basis for an award of attorney's fees"). So we must deny attorney's fees in preliminary-injunction cases if a defendant's voluntary action moots the case.[2]

Here, Tennessee's voluntary repeal of the challenged provisions bars recovery of § 1988(b) attorney's fees. What mooted the case was the State-Defendants' own actions. They repealed the law that the Plaintiffs challenged as unconstitutional. Granting the fees otherwise promotes the very thing *Buckhannon* cast aside—the catalyst theory. To faithfully implement *McQueary I*'s framework and *Buckhannon*'s restriction, I would reverse the district court's award of attorney's fees.

---

[2]The district court acknowledged that "it appears" the granting of the Plaintiffs' request for a preliminary injunction "*caused* the repeal[.]" (R. 116, Memorandum, at 9.) But the court incorrectly applied *Buckhannon*. It held that "the repeal is a contextual fact relevant to . . . the question of how much judicial relief was necessary in order for the [P]laintiffs' claim to be considered successful." (*Id.*) So in other words, the court treated *Buckhannon* as a consideration instead of what it is—a requirement. But we cannot ignore *McQueary I*'s framework. Even after a court awards a preliminary injunction, *Buckhannon*'s backstop against the catalyst theory applies with full force. *McQueary I*, 614 F.3d at 601.

## II.

Even putting *Buckhannon* aside, the preliminary injunction doesn't satisfy *McQueary I*'s case-specific inquiry. In *McQueary I*, although we noted that there was support for the idea that a preliminary injunction could never be the basis for a fee award, we rejected that hard-and-fast rule. 614 F.3d at 599. Instead, we said that such an approach, while "clear," failed "to account for fact patterns in which the claimant receives everything it asked for in the lawsuit, and all that moots the case is court-ordered success and the passage of time." *Id.* Nevertheless, "when a claimant wins a preliminary injunction and nothing more, that usually will not suffice to obtain fees under § 1988." *Id.* at 604. To obtain § 1988(b) attorney's fees in those rare cases, courts must find that the change caused by a preliminary injunction is court-ordered, material, and enduring in the legal relationship between the parties. *McQueary I*, 614 F.3d at 597–98. Here, the parties only dispute whether the relief was "enduring" enough to support prevailing-party status. I believe it wasn't.

This case is a mirror image of *McQueary I* and *II*. Same law. Same basic facts. A plaintiff challenges a state law to prevent future and reoccurring constitutional violations. A district court grants a preliminary injunction to enjoin the law's enforceability. And the state repeals the challenged provisions before the case's end, thus rendering the case moot. *See id.* at 595–96. In *McQueary II*, we ultimately affirmed that "the circumstances did not justify a fee award." 508 F. App'x at 524.

Aside from denying the catalyst theory, *McQueary II* rejected that "the preliminary injunction granted [McQueary] all the relief he sought." *Id.* That's because the nature of the relief he sought was permanent. *Id.* Like the Plaintiffs here, McQueary wanted to prevent future constitutional violations. *Id.* Rather than *court-ordered permanent* relief, McQueary only received a preliminary injunction. *Id.* That is, until the state-defendant voluntarily repealed its provisions. *Id.* So the preliminary injunction wasn't enduring because it didn't provide everything McQueary asked for. *Id.*

*McQueary I* expressed a simple observation: A preliminary injunction is generally not enough to confer prevailing-party status unless the temporary relief gives the plaintiff

"everything" he asked for.  614 F.3d at 599.  And *McQueary II* applied that logic.  508 F. App'x at 524.[3]  It's not as if the relief sought here was for a single event, thus allowing plaintiffs to obtain their one-time prayer for relief via a preliminary injunction.  *Cf. Miller v. Caudill*, 936 F.3d 442, 450 (6th Cir. 2019) (holding that plaintiffs prevailed when a preliminary injunction granted them their requested relief—"marriage licenses").[4]  To the contrary, the Plaintiffs here sought relief for one upcoming election cycle and permanent relief for all future elections.  That distinction matters.  The district court granted them a preliminary injunction.  And a few months later, the Tennessee legislature, not the court, voluntarily repealed the requirements.

To be sure, the Plaintiffs may have won the battle by avoiding compliance with state-law requirements in their upcoming election.  But they didn't win the war for all future elections, at least not in court.  The Plaintiffs wanted a permanent injunction to enjoin Tennessee from enforcing its statute and a declaration that it was unconstitutional, which they didn't get.  So the preliminary relief wasn't—well—enduring, at least not under § 1988(b).

### III.

Instead of *McQueary I* and *II*, the majority believes that *Green Party of Tennessee* is the "closest" case on point.  (Majority Op. at 6.)  I respectfully disagree because that case didn't deal with a preliminary injunction at all.  The district court granted final injunctive relief based on a merits decision on summary judgment.  *Green Party of Tenn.*, 767 F.3d at 542.  And only after the state-defendants appealed the case did the state legislature amend the provisions at issue.  *Id.*  So the basis for awarding § 1988(b) attorney's fees stemmed not from a preliminary injunction, but from the court's merits decision.

Here, no court made a judgment on the validity of Tennessee's election requirements.  And the fact that the district court provided an explanation on the *likelihood* of success on the

---

[3]As the Plaintiffs point out, the postures of *McQueary II* and this case are not exactly the same.  *McQueary II* affirmed a district court's fee denial, and here, we are reviewing a district court's fee grant.  But I don't believe that this distinction is material.  Again, the basic facts and legal framework are the same.

[4]The majority reasons that because the Plaintiffs could conduct voter-registration drives for seven months, the benefits here are as "irrevocable" as the marriage licenses in *Miller* were.  But the relief sought wasn't for a one-time event like in *Miller*.  Instead, the Plaintiffs wanted permanent relief for all future elections.

merits before awarding the preliminary injunction doesn't matter.  Likelihood of success on the merits isn't a final determination of success on the merits.  Our case-specific requirements under *McQueary* still stand, as does our rejection of the catalyst theory.  So *Green Party of Tennessee* remains inapposite.

**IV.**

For these reasons, I respectfully dissent.