NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0370n.06

Case No. 22-5969

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 14, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| G.S., by and through his parents and next friends, Brittany and Ryan Schwaigert, et al, | ) ) ) | |
| Plaintiffs-Appellees, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| v. | ) ) ) | |
| BILL LEE, Governor, | ) | |
| Defendant-Appellant. | ) ) | O P I N I O N |

Before: SUTTON, Chief Judge; DAVIS and MATHIS, Circuit Judges.

DAVIS, Circuit Judge. Shelby County issued a mask mandate to protect against the continued spread of COVID-19 during a state-declared state of emergency stemming from the high rates of transmission. Days later, the Governor of Tennessee signed an executive order permitting students and their parents to opt out of the County's mask mandate as applied to grade-school students in academic settings. Shelby County subsequently recognized the executive order as an exception to the mask mandate. Consequently, hundreds of grade-school students in Shelby County started attending schools without face coverings. Three grade-school students with disabilities sued the Governor and Shelby County on behalf of themselves and a class of similarly situated individuals to challenge the executive order and the County's failure to enforce its mask mandate in academic settings. The students requested declaratory and injunctive relief, alleging that they faced heightened risks of death or serious injury in the event of exposure to the virus, and

accordingly required reasonable accommodations in the form of face coverings for other students in their proximity. The district court granted a preliminary injunction, but the case became moot before it ruled on the students' request for a permanent injunction. It then awarded attorneys' fees to the students based on their preliminary relief. The Governor appeals the fee award, contending that the students are not "prevailing parties" as required by the relevant fee-shifting statutes. For the reasons that follow, we AFFIRM.

I.

On August 6, 2021, as the nation contemplated and navigated the transition from quarantine practices back to in-person interactions, the Shelby County Health Department issued Amended Health Order No. 24 ("AHO No. 24"). Pursuant to Tenn. Code Ann. § 68-2-609(4), which authorizes county health officials to issue general health and safety orders, AHO No. 24 purported to address the County's consistently high rates of positive COVID-19 cases that constituted a public health emergency. The order provided guidance on several measures to protect against COVID-19 including universal masking for persons entering indoor areas of K–12 schools, Pre-K schools, and daycare facilities.

On August 16, 2021, ten days after the county issued AHO No. 24, Bill Lee, the Governor of Tennessee, signed Executive Order No. 84 ("EO No. 84") which permitted grade-school students and their parents to opt out of AHO No. 24's mask mandate in academic settings. In response, the Shelby County Health Department issued Amended Health Order No. 25 ("AHO No. 25"), which listed EO No. 84 as an exception to the County's masking requirement. As a result, Shelby County stopped enforcing the mask-mandate at schools, and hundreds of grade-school students started attending schools with no face coverings.

On August 27, 2021, two Shelby County students with disabilities, G.S. and S.T, sued Governor Lee and the County in federal court on behalf of themselves and a class of similarly situated students, seeking declaratory and injunctive relief relating to Shelby County's masking practices. The students brought claims under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act, alleging that they had medical conditions which increased their risk of death or serious complications in the event of exposure to COVID-19. The students further alleged that some of the purported class members were under age 12, rendering them ineligible for COVID-19 vaccinations according to the Food and Drug Administration ("FDA") regulations. The students sought relief, including: (1) a declaration that EO No. 84 was in violation of both the ADA and the Rehabilitation Act; (2) a temporary restraining order ("TRO") enjoining the Governor and the State of Tennessee from permitting parents to opt out of Shelby County's mask mandate; (3) preliminary and permanent injunctions enjoining the same; and (4) reasonable attorneys' fees, costs, and expenses.

On the same day they filed suit, the students also filed a motion for a TRO and a preliminary injunction against the Governor and Shelby County. The district court granted the TRO first, and a preliminary injunction shortly after, holding separate hearings for each. During the TRO hearing, G.S.'s mother testified that Shelby County grade schools had been enforcing the AHO No. 24 mask mandate but stopped after the Governor issued EO No. 84. As a result, her son who needs to interact with neurotypical peers according to his individualized education plan was no longer getting those interactions. At the time of the TRO hearing, 22% of students had opted out of the County's mask mandate at S.T.'s school. S.T.'s mother testified that S.T. had been excluded from participating in certain classes because other students were not wearing masks. Additionally, one of the students' experts testified about the effectiveness of masks in reducing the risk of exposure

to COVID-19, especially with respect to students with disabilities who face a higher risk of death. The parties also briefed the TRO motion before the hearing and provided supplemental briefing afterwards.

At the preliminary-injunction hearing, the students relied on the evidence and testimony they presented at the TRO hearing. For his part, the Governor offered Theresa Nicholls, the Assistant Commissioner of Special Populations at the Tennessee Department of Education, as a witness. The students also amended their complaint on the day of the hearing to add a third student, J.M., as a plaintiff. Like the other named students, J.M. has a disability that places her at a heightened risk of death or serious complications in the event of COVID-19 exposure.

The district court granted the students' request for a preliminary injunction on September 17, 2021. In doing so, the court enjoined the Governor from enforcing EO No. 84 or otherwise allowing parties to opt out of the County's mask mandate, ordered Shelby County to enforce AHO No. 24, and noted that the injunction would be in effect until terminated by a final order or otherwise dissolved by the court. Shelby County subsequently moved for judgment on the pleadings. The district court granted Shelby County's motion and dismissed the County from the lawsuit. As for Governor Lee, he appealed the district court's order granting a preliminary injunction and requested a stay pending resolution of his appeal. When the district court denied the Governor's motion to stay, he requested a stay from this court. On November 12, 2021, while his stay motion was pending in this court, the Tennessee General Assembly enacted the COVID-19 Act which addressed face covering protocols for schools, including with respect to reasonable accommodations pursuant to the ADA. Tenn. Code Ann. § 14-2-104(d). As a result, the Governor terminated EO No. 84 because the COVID-19 Act "negate[d] the need" for such an order.

We later denied the Governor's motion for a stay, finding that the students had provided ample evidence that absent reasonable accommodations to mitigate the risk of contracting COVID-19, they would be denied public education due to their disabilities. *G.S. by & through Schwaigert v. Lee*, No. 21-5915, 2021 WL 5411218, at \*2 (6th Cir. Nov. 19, 2021). While the students had offered evidence before the district court regarding the reasonableness of a universal mask mandate to mitigate the spread of the virus, the Governor had not submitted evidence to the contrary. *Id.* Consequently, he had not submitted sufficient evidence to show a likelihood of success on the merits of his appeal. *Id.* at \*3. We also questioned whether the enactment of the COVID-19 Act and termination of EO No. 84 rendered this case moot. *Id.* But we declined to answer because the district court had not had an opportunity to address the issue. *Id.* Pursuant to a joint motion by the parties, we ultimately dismissed the Governor's appeal.

Back in the district court, on December 23, 2021, the students moved for attorneys' fees, arguing that they were "prevailing parties" under 42 U.S.C. §§ 1988, 12205.[1] The Governor moved to dismiss based on lack of subject-matter jurisdiction, maintaining that the students' claims had become moot. The students opposed the Governor's motion and filed a motion for summary judgment on the merits, which also contained a request for a permanent injunction. The district

---

[1] The students brought claims pursuant to the ADA and the Rehabilitation Act. Accordingly, 42 U.S.C. § 12205 (ADA) and 29 U.S.C. § 794a (Rehabilitation Act) govern their request for attorneys' fees, not 42 U.S.C. § 1988. Section 1988 lists the civil-rights actions to which it pertains and does not include the claims in this case. Nonetheless, our analysis regarding whether a party qualifies as a "prevailing party" is interchangeable under these fee-shifting statutes. *See Buckhannon Bd. & Care Home, Inc. v. W. V. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001) (explaining that "prevailing party" is a term of art and citing § 1988 cases to analyze a request for fees pursuant to § 12205); *see also Gavette v. Brady*, 7 F.3d 233 (6th Cir. 1993) (table) (citing § 1988 cases to analyze the term in a case where the plaintiff requested fees pursuant to 29 U.S.C. § 794a). Accordingly, we review cases discussing § 1988 and other fee-shifting statutes to inform our analysis.

court granted the Governor's motion to dismiss and denied the students' motion for summary judgment as moot. Regarding its ruling on the motion to dismiss, the court explained:

> There is no reasonable expectation that another Executive Order involving an opt-out masking provision will recur, and the combination of [Tennessee's] COVID Act, the lack of a declared state of emergency in Tennessee, and [the Governor's termination of EO No. 84] have eradicated, completely and irrevocably, the presence and effect of the opt-out mask provision in schools.

R. 127, PageID: 1772. The district court noted that the state of emergency had expired on November 19, 2021, and was not extended. The students subsequently renewed their request for attorney's fees, which the district court granted. The court then dismissed the case with prejudice and the Governor timely appealed, maintaining that the students were not "prevailing parties" such that they were entitled to a fee award.

II.

American common law does not provide a right to attorney's fees. And pursuant to the "American rule" that each party is to bear his or her own costs, we do not award such fees "absent explicit statutory authority." *McQueary v. Conway*, 614 F.3d 591, 597 (6th Cir. 2010) (citation and quotation marks omitted); *see also Miller v. Caudill*, 936 F.3d 442, 445 (6th Cir. 2019). Several statutes, including the ADA and Section 504 of the Rehabilitation Act, authorize courts to grant fees to the "prevailing party." 42 U.S.C. § 12205; 29 U.S.C. § 794a. Whether a party has prevailed within the meaning of these fee-shifting statutes is a legal question that we review de novo. *Miller*, 936 F.3d at 448.

A party who obtains preliminary injunctive relief is not ordinarily considered a prevailing party for purposes of attorneys' fees. *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 538 (6th Cir. 2019). But there are "occasional exceptions." *Id.* (quoting *McQueary*, 614 F.3d at 604) (quotation marks omitted). Namely, a plaintiff will be deemed the prevailing party if the

preliminary injunction resulted in "a court-ordered, material, enduring change in the legal relationship between the parties." *Miller*, 936 F.3d at 448.

The Supreme Court's guidance in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001) and *Sole v. Wyner*, 551 U.S. 74 (2007), and our own previous decisions, give shape to this inquiry. *McQueary*, 614 F.3d at 597–598; *see also Dewine*, 931 F.3d at 541 (explaining that a combined application of these Supreme Court cases and relevant Sixth Circuit precedent can be used to determine whether a party prevailed). *Buckhannon* emphasizes that the change in the legal relationship between the parties must be court-ordered rather than voluntary. 532 U.S. at 604. This means that the "plaintiff [cannot] 'prevail' based on the theory that its lawsuit catalyzed a change in the defendant's behavior." *Dewine*, 931 F.3d at 538 (citing *Buckhannon*, 532 U.S. at 605). *Sole* stresses that the alteration in the legal relationship must be "enduring" and material. 551 U.S. at 82, 86; *McQueary*, 614 F.3d at 597–98. To be considered enduring, a change must not be "reversed, dissolved, or otherwise undone by the final decision in the same case." *McQueary*, 614 F.3d at 597 (quoting *Sole*, 551 U.S. at 83). To be material, the party must have "succeed[ed] on [a] significant issue in litigation which achieve[d] some of the benefit the part[y] sought in bringing suit." *Dewine*, 931 F.3d at 538 (second, third, and fourth alterations in original) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Finally, this circuit has underscored that the plaintiff's success must have been "based, at least in part, on the merits of the claim." *Id*. at 539 (citation omitted).

If "the combined application of [the cases we highlighted in *McQueary*] does not clearly dictate whether a plaintiff is prevailing, the necessary inquiry [becomes] 'contextual and case-specific,' and for the district court's consideration." *Dewine*, 931 F.3d at 541 (quoting *McQueary*, 614 F.3d at 601, 604).

III.

*On the Merits.* Here, the Governor does not argue that the preliminary injunction was not based on the merits; nor could he. The district court held hearings on the students' request for a TRO and a preliminary injunction, both of which involved the Governor's and the County's masking requirements in grade schools. During the TRO hearing, the court considered declarations and heard testimony from two of the named students' mothers and two medical experts on behalf of the students, all regarding the merits of the students' claims. The court also heard testimony from a witness on the Governor's behalf. Additionally, the court permitted the parties to submit supplemental briefing before and after the TRO hearing. With this backdrop, the district court issued the preliminary injunction only after it "conclude[d] that [the students had] not only shown that the accommodation of required indoor masking is reasonable, but also that [EO No. 84] rejected this accommodation in favor of more costly, inefficient alternatives." R. 62, PageID: 1254. When Governor Lee appealed the preliminary-injunction ruling, we agreed with the district court. We found not only that the students had demonstrated a likelihood of success on the merits, but also that the Governor had failed to offer evidence to rebut their claims or otherwise show a likelihood of success as to his appeal. *G.S.*, 2021 WL 5411218, at *2. The Governor cannot dispute that the district court's preliminary-injunction order was the result of substantive hearings and briefing as opposed to an effort to maintain the status quo in light of equity considerations. *McQueary*, 614 F.3d at 598 ("In the context of a preliminary injunction, . . . there is only prevailing party status if the injunction represents an unambiguous indication of

probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of equities greatly favors the plaintiff." (citation and quotation marks omitted)).

Instead of contesting whether the preliminary relief was on the merits, Governor Lee contends that the students are not prevailing parties because their preliminary-injunctive relief did not produce an enduring change in the legal relationship between the parties. He also implies that the change was the result of his voluntary action as opposed to a court order.[2] Neither argument resonates.

*Enduring Relief.* Governor Lee argues that the students' relief was not sufficiently enduring because they did not get everything they asked for in this lawsuit, and because the preliminary injunction did not provide them with a one-time irrevocable opportunity. But as we explained in *Dewine*, plaintiffs are not required to get everything they asked for to enjoy prevailing-party status. 931 F.3d at 540–41. In that case, Planned Parenthood of Southwest Ohio Region ("Planned Parenthood") sued Ohio's attorney general and a county official, challenging a state statute. *Id.* at 534. The statute regulated a medical abortion drug pursuant to the FDA's approval letter and final printed label. *Id.* at 536. But contrary to standard medical practice, the FDA's guidance did not allow physicians to rely on a particular evidence-based protocol in prescribing the drug. *Id.* at 535. Planned Parenthood raised four claims, seeking declaratory relief, a preliminary injunction and a permanent injunction preventing enforcement of the statute. *Id.* Based on the likelihood of success on the merits as to one of their claims, Planned Parenthood

---

[2] The Governor implies throughout his initial brief that the change in the parties' legal relationship was a result of his voluntary action but does not develop the argument. This argument fails for that reason alone. *See United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997))). However, because the students address the issue and the Governor arguably responds, both in footnotes, we briefly consider voluntary cessation below.

obtained preliminary and permanent injunctions enjoining enforcement of the law in full. *Id.* at 534–36. We affirmed the preliminary injunction in part on appeal, narrowing the scope to govern only unconstitutional applications of the statute. *Id.* at 536. But we ultimately vacated the permanent injunction. *Id.* at 536–537. After the preliminary injunction had been in place for nearly 12 years, the FDA mooted the parties' dispute by amending its approval letter and final printed label for the drug to comport with the evidence-based protocol at issue. *Id.* at 537. As a result, the parties agreed to dismiss the case. *Id.* Planned Parenthood subsequently sought and obtained attorneys' fees. *Id.* at 537–38.

The state offered several arguments in *Dewine* to dispute prevailing-party status, including that Planned Parenthood did not receive "everything it asked for." *Dewine*, 931 F.3d at 540 (quoting *McQueary*, 614 F.3d at 599). In rejecting this argument, we first clarified that "*McQueary* does not require a plaintiff to achieve such comprehensive success in all instances in which cases are mooted prior to the issuance of a final judicial order." *Id.* at 540. That language merely illustrated why we declined to create a *per se* rule on prevailing-party status in the context preliminary injunctions. *Id.* We further explained that it is not "the magnitude of a party's relief [that] dictate[s] the outcome of the prevailing-party inquiry." *Id.* at 541 (citing *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 620 (6th Cir. 2013)). Rather, the standard is a "generous" one, where "a plaintiff prevails 'even if [his] limited success does not grant him the "primary relief" he sought.'" *Id.* (alteration in original) (quoting *McQueary*, 614 F.3d at 603).

Governor Lee's arguments fail for the same reasons we outlined in *Dewine*. Although we vacated Planned Parenthood's permanent injunction, that ruling did not disturb the preliminary injunction. *Id.* at 541. And even though three of the four claims in that case failed, one survived. *Id.* at 537. We required no more to find that Planned Parenthood had received at least some of the

benefit it sought in the lawsuit. *See id.* at 542. Likewise, the fact that the students here also requested permanent relief is inconsequential under this generous standard. *McQueary*, 614 F.3d at 603 ("A plaintiff crosses the threshold to 'prevailing party' status by succeeding on a single claim, even if he loses on several others and even if that limited success does not grant him the 'primary relief' he sought." (citing *Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790–791 (1989))). The students requested a preliminary injunction enjoining enforcement of EO No. 84 and requiring Shelby County to enforce its mask mandate in grade schools with no opt-out provisions pursuant to EO No. 84. That is precisely what they received.

The Governor relies on *Miller* to argue that the preliminary injunction in this case did not provide the students with a "one-time" irrevocable opportunity. 936 F.3d at 448. But this reliance is misplaced. In *Miller*, we found the plaintiffs' preliminary injunctive relief enjoining the defendant from refusing to issue them marriage licenses sufficient to achieve prevailing-party status. *Id.* at 448–449. We did mention that marriage "licenses [were] one-time things for all but the dilatory or wishy-washy." *Id.* at 448. However, our analysis there called for a "case-specific inquiry;" we were not establishing a bright-line rule. *Id.* (quoting *McQueary*, 614 F.3d at 601). Indeed, we only used the phrase "one-time" once to explain why plaintiffs were not required to seek relief specific to a time and place to be considered prevailing parties. *Id.* Notably, we have not imposed this one-time rule in every case. Take our decision in *Tennessee State Conf. of NAACP v. Hargett*, 53 F.4th 406 (6th Cir. 2022). In that case, we found a preliminary injunction against enforcement of a state statute sufficiently enduring where it allowed plaintiffs the "unburdened" opportunity "to conduct voter-registration drives for seven months during the run-up to the 2020 election" before the state legislature amended the relevant statute and mooted the case. *Id.* at 410–411.

Under the Governor's proposed "one-time" blanket rule, the plaintiffs in *Hargett* would not have prevailed for purposes of attorneys' fees because the case became moot before the election, so the specific time and event had not occurred. *Id.* at 411. And voter registrations are not "one-time" things; unlike marriages, they have expiration dates and require renewal. Still, as we explained, those plaintiffs were prevailing parties and their relief sufficiently enduring because "[t]hose drives, and the voter registrations that resulted from them, [were] as 'irrevocable' as the marriage licenses in *Miller* were." 53 F.4th at 411. So too were the abortion drugs prescribed pursuant to the preliminary injunction in *Dewine* that stood for nearly 12 years before a third party's action mooted the case. 931 F.3d at 534. And the same is true for the education that the students received each day the preliminary injunction in this case afforded them the opportunity to participate in in-person learning with the mask-mandate in place during the state-declared state of emergency. To be sure, the district court issued the preliminary injunction on September 17, 2021, and the state of emergency did not expire until November 19, 2021, about a week after Governor Lee terminated EO No. 84.

Governor Lee argues that the preliminary injunction was only in place for two months before the case became moot, and the students maintain that the case survived closer to six months after they obtained preliminary injunctive relief. This dispute is of no consequence. The Governor has not cited any case requiring such a mathematical approach to determining whether relief was sufficiently enduring. True, the preliminary injunctions in *Hargett* and *Dewine* were 7 months and almost 12 years, respectively, which supported a finding that those plaintiffs were entitled to prevailing party status. *Hargett*, 53 F.4th at 410; *Dewine*, 931 F.3d at 534. Looking at the timeline can be helpful, but we did not establish any specific time threshold in either case. Rather, we placed more weight on the question of whether the relief was irrevocable in determining whether

- 12 -

it was sufficiently enduring in *Hargett*, 53 F.4th at 411. And we explained that the "most important[]" point in *Dewine* was that "Planned Parenthood's relief never expired and was not 'reversed, dissolved, or otherwise undone by the final decision in the same case.'" 931 F.3d at 539 (quoting *Sole*, 551 U.S. at 83). The same is true for the students' relief in this case.

The Governor also argues that the students' relief was not sufficiently enduring because they claimed below, in their response to the Governor's motion to dismiss, that the COVID-19 Act violates their rights even more than EO No. 84. However, this point is of questionable relevance. The legality of the COVID-19 Act is not at issue in this case. We are satisfied that the students' relief was sufficiently enduring in that the injunction prevented Governor Lee from restricting their access to in person education during the state-declared state of emergency. *See Roberts v. Neace*, 65 F.4th 280, 285 (6th Cir. 2023) (finding preliminary injunction sufficiently enduring where "congregants could attend faith-based gatherings and travel out of state, all without the threat of enforcement" of orders issued in response to COVID-19 prohibiting religious gatherings).

*Voluntary Cessation*. The Governor suggests in his reply that the students are attempting to invoke the "catalyst theory" that the Supreme Court rejected in *Buckhannon*, 532 U.S. at 610. Regardless of whether the Governor waived this argument by failing to adequately develop it or raising it for the first time in reply,[3] the record would seem to belie this argument in any event. It was the Tennessee Legislature's passage of the COVID-19 Act, along with the expired state of emergency that mooted this case; not Governor Lee's subsequent termination of EO No. 84.[4] The COVID-19 Act accounted for reasonable accommodations pursuant to the ADA in grade schools,

---

[3] *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010).

[4] Whether the Governor's role in signing the legislation into law makes any difference to the analysis is an open question; one the parties' briefing does not address or otherwise aid the court in resolving today.

including mask-mandates.  Tenn. Code Ann. § 14-2-104(b).  EO No. 84's opt-out provision did not provide for such an accommodation and was accordingly in violation of Tennessee law. Governor Lee's termination of a legally invalid executive order could not have mooted this case. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982) ("Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'" (alteration in original) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953))).

IV.

For the reasons stated above, we **AFFIRM**.